LINDLOFF, Appellant, vs. Ross, Respondent.

*May 12—June 20, 1932.*

For the appellant there was a brief by *A. J. Connors* of Barron and *W. T. Doar* of New Richmond, and oral argument by *Mr. Doar.*

For the respondent there was a brief by *Laurence S. Coe* of Rice Lake, attorney, and *Clarence C. Coe* of Barron of counsel, and oral argument by *Laurence S. Coe.*

NELSON, J. It is well established that it is the duty of a dentist to exercise that degree of care, diligence, judgment, or skill which dentists in good standing usually exercise in the same or similar localities under like or similar circumstances, having regard to the advanced state of dental science at the time of discharging his legal duty to his patient. *Eggert v. Dramburg,* 197 Wis. 153, 221 N. W. 732; *Krueger v. Chase,* 172 Wis. 163, 177 N. W. 510; *Nelson v. Harrington,* 72 Wis. 591, 40 N. W. 228; *Wurdemann v. Barnes,* 92 Wis. 206, 66 N. W. 111; *Marchand v. Bellin,* 158 Wis. 184, 147 N. W. 1033.

In order to hold a dentist liable the burden rests upon a plaintiff to show that the dentist failed in the requisite degree of care and skill. *Kuehnemann v. Boyd,* 193 Wis. 588, 214 N. W. 326, 215 N. W. 455.

The degree of care and skill which must be exercised can only be proved by the testimony of experts. Without such testimony the jury has no standard which enables it to determine whether the defendant failed to exercise the degree of care and skill required of him. *Kuehnemann v. Boyd, supra; Krueger v. Chase, supra; Holsapple v. Scofield,* 176 Wis. 649, 187 N. W. 682; *Wurdemann v. Barnes, supra.*

The plaintiff earnestly contends that the following facts and circumstances, which are substantially undisputed, gave rise to a jury issue and support the verdict rendered: The plaintiff's jaw was not fractured before the September 9th operation. Different and more serious results followed the second extraction than followed the first. After the second operation the plaintiff was unable to open and close his mouth. Pain, infection, high fever, and swooning spells

followed the second operation. There was no evidence of any subsequent injury or blow which could have caused the fracture. Developments following the operation were consistent with a broken jaw. The break in the jaw was straight up and down.

It is not claimed that the impacted tooth should not have been removed or that the method employed by the defendant was an improper one or that it could have been removed without breaking down or cutting away parts of the jaw bone in which it was impacted, or that anything could have been done by the defendant to prevent infection, or that, if the jaw was broken during the operation, such breaking was in any way responsible for the infection or that the defendant failed to exercise proper care and skill in his treatment of the infection, or that, if the jaw was broken during the operation and the defendant had discovered the fracture at some time prior to the plaintiff's Indiana trip, the defendant could have done anything more than he did do to better treat the diseased jaw.

No expert testimony was produced by the plaintiff and none was adduced upon the cross-examinations of the defendant, Dr. Dawson, or Dr. Hopkinson, who testified as experts, which tended to prove that the defendant failed to exercise that degree of care and skill which he was in duty bound to exercise.

The plaintiff did not know and could not say when his jaw was broken. True, he testified to the excruciating pain which he suffered after the operation, to the swelling of his jaw, its stiffness, his inability to open or close it, to the infection, to the draining of pus from the jaw, etc., but he did not attempt to testify, and would not have been competent to testify had he so attempted, that the symptoms described by him which followed the second operation proved, or tended to prove, that his jaw was broken during the second

operation or that the symptoms were consistent only with a broken jaw rather than with the infection which unavoidably resulted from the operation. We think, under the facts and circumstances of this case, it was absolutely necessary for the plaintiff to produce expert testimony proving or tending to prove that the defendant failed to exercise that degree of care and skill required of him. Such seems to be the established rule in this state. Since the plaintiff failed to produce such necessary testimony he failed, in our opinion, to prove actionable negligence.

Several cases are cited by the plaintiff from other jurisdictions which permitted recoveries in malpractice cases to stand even though no expert testimony was produced. These cases involve facts clearly distinguishable from those involved in this case. In *Hill v. Jackson,* 218 Mo. App. 210, 265 S. W. 859, the plaintiff claimed that the defendant dentist had dislocated her jaw when extracting her teeth. Plaintiff testified positively that the dislocation was produced at the time of the extraction and that she immediately told the dentist that he had dislocated her jaw. It was held that an opinion by an expert was not necessary in order to determine that the plaintiff's jaw was dislocated.

In *Francis v. Brooks,* 24 Ohio App. 136, 156 N. E. 609, an unerupted tooth was removed by the defendant. The tooth had grown downwards instead of upwards and necessitated removal of the jaw bone surrounding the tooth to such an extent as to leave only a thin portion of the jaw bone remaining. No expert testimony was produced. The case, however, seems to have been affirmed largely because the jury found that the particular operation was performed without the consent of the patient and against her express wish. In *Mernin v. Cory,* 145 Cal. 573, 79 Pac. 174, the necessity of expert testimony seems not to have been raised or considered.

The plaintiff claims that his jaw was broken on September 9th as a result of the operation. In other words, that it was a traumatic fracture. The defendant, on the other hand, claims that the plaintiff's jaw was not broken at that time; that the fracture was not traumatic but pathological; and that it resulted from the diseased condition due to infection. The defendant and several experts testified that the fracture was pathological. No attempt was made by the plaintiff to deny or contradict such testimony. It appears that fractures may result from disease without a blow, strain, or force. All of the evidence is obviously as consistent with that of a pathological fracture as that of a traumatic fracture. In this situation the jury ought not to be permitted to speculate or conjecture as to the cause of the plaintiff's fracture. In *Matuschka v. Murphy*, 173 Wis. 484, 492, 180 N. W. 821, it was said, in regard to the facts therein:

"Which was the cause of the ultimate results cannot be told with any degree of certainty. While the experts differed as to the probability of the efficient cause, they conceded the possibility of any one of several causes. Where we have a result which may be attributable to one of two causes, it is not surprising that experts will differ as to the real cause. It emphasizes the fact, however, that any conclusion with reference thereto is mere conjecture and falls far short of that certainty which the law requires for the support of verdicts. Our conclusion is that the verdict of the jury, in so far as it finds that the want of care and skill on the part of Stromberg was the proximate cause of plaintiff's injuries, is unsupported by the evidence and cannot be sustained." See, also, *DeSham v. Taugher,* 183 Wis. 446, 198 N. W. 268.

A careful review of the evidence fails to reveal any actionable negligence on the part of the defendant and we think that the trial court was right in changing the answers of the jury and in rendering judgment for the defendant.

When the special verdict was being framed the plaintiff requested the court to submit the following questions:

"Question: Did the defendant, after taking the plaintiff to the Mayo clinic at Rochester, Minnesota, fail to use reasonable care and skill in the treatment of plaintiff?

"If you answer the above question 'Yes,' then answer this: Was such failure to use ordinary care and skill in the treatment of plaintiff [by the defendant] a proximate cause of plaintiff's injuries?"

The court, however, refused to submit such questions for the reason that there was no evidence that a better result would have been obtained if a different course had been pursued and for the further reason that it appeared without dispute that Dr. Dawson, plaintiff's physician, was responsible for determining the course of treatment pursued. Dr. Dawson testified that he assumed responsibility for deciding against the operation recommended by Dr. New. The defendant could not have performed that operation and his failure to do so cannot be charged to him. As before stated, the ultimate results obtained were satisfactory and a good recovery was had although the operation suggested by Dr. New might have resulted in a somewhat speedier recovery. We see no error in the refusal of the court to submit the requested questions to the jury.

*By the Court.*—Judgment affirmed.