STATE, Respondent, v. GRAYSON, Appellant.

*September 12—October 7, 1958.*

204

206

For the appellant there was a brief by *Lucien J. Piery* of Kenosha, and *Johns, Roraff, Pappas & Flaherty* of La Crosse, and oral argument by *Robert D. Johns.*

For the respondent there was a brief by the *Attorney General* and *John D. Winner,* deputy attorney general, and *John H. Bowers,* assistant attorney general, and oral argument by *Mr. Bowers* and by *Mr. Warren H. Resh,* assistant attorney general.

CURRIE, J.    Sec. 147.14, Stats., prohibits any person from treating the sick who does not hold a license or certificate of registration from the state board of medical examiners,

"except as otherwise specifically provided by statute." By sec. 147.23 the legislature has provided for the licensing of chiropractors. It thereby necessarily follows that chiropractors so licensed are authorized to treat the sick only to the extent authorized by their chiropractic license.

To properly resolve the issue, of whether the paragraphs of the answer attacked by demurrer are irrelevant, requires that we make an analysis of the material provisions of sec. 147.23, Stats., and determine the validity of certain rules adopted by the chiropractic board of examiners in order to effectuate the purpose of such statute.

The procedure for licensing chiropractors embodied in sec. 147.23, Stats., was enacted by the 1925 legislature as ch. 408, Laws of 1925. This legislation originated in the assembly as Bill No. 322, A. As originally introduced, such bill provided for a definition of "chiropractic" to be incorporated in the new statute as sub. (1) of sec. 147.23, reading as follows:

"Chiropractic is defined as the adjustment by hand of the articulation of the human vertebral column and the accessory articulations thereof." In enacting the bill the legislature amended the same by striking out such definition. The result is that sec. 147.23, Stats., has never contained a definition of the word "chiropractic."

Sub. (1) of sec. 147.23, Stats., provides that no person shall practice chiropractic unless he has a certificate of registration in the basic sciences and a license from the state board of examiners in chiropractic. Sub. (2) provides for the appointment of the three members of such licensing board of examiners by the governor with the consent of the senate, and states the necessary qualifications, compensation, and term of office of such board members.

Sub. (3) of such statute establishes the necessary qualifications a person must possess in order to apply for a license in chiropractic. These are: Good moral character, two years

of study in a regularly prescribed course for a bachelor of arts or science degree in a college accredited by the North Central Association of Colleges and Secondary Schools, and graduation from a "reputable school in chiropractic" approved and recognized by the chiropractic board of examiners. Such school in chiropractic must be one having a residence course of thirty-six months consisting of not less than 3,600 sixty-minute class periods.

Sub. (4) of such statute provides that the examination of applicants for a license shall be "in the subjects usually taught in such reputable schools of chiropractic."

Sec. 147.23, Stats., confers no express rule-making power upon the chiropractic board of examiners. However, sec. 227.014 (2) (a), which is part of the Wisconsin Administrative Procedure Act, does confer such power and provides:

"Each agency is authorized to adopt such rules interpreting the provisions of statutes enforced or administered by it as it considers to be necessary to effectuate the purpose of the statutes, but such rules are not valid if they exceed the bounds of correct interpretation."

The chiropractic board of examiners has adopted certain rules which have been duly published in the Wisconsin Administrative Code. We deem that of these rules, secs. Chir. 1.14, 3.01, and 3.02 (1), 1 Wis. Admr. Code, pp. 1, 9, are material to the issue before us on this appeal. We quote such rules as follows:

Chir. 1.14. "CHIROPRACTIC DEFINED. The science of chiropractic is based upon the premise that disease or abnormal function is caused by interference with normal nerve transmission and expression, due primarily to pressure, strain, irritation, or tension upon the spinal nerves as they emit from the spinal column, as a result of bony segments, especially of the spine, deviating from their normal juxtaposition. The practice of chiropractic consists of the analysis

of any interference with normal nerve transmission and expression and the correction thereof by a specific adjustment with the hands of the abnormal deviations of the bony articulations, especially of the spine, for the removal of the cause of disease, without the use of drugs or surgery. The term, analysis, is construed to include the use of X ray and other analytical instruments generally used in the practice of chiropractic."

Chir. 3.01. "SUPPLEMENTARY PROCEDURES. (1) The use of diagnostic instruments as taught in the chiropractic colleges and generally used in chiropractic practice, as well as purely relaxing adjuncts such as heat lamps or hot towels, used preparatory to the adjustment, are permissible. The use of instruments or machines constituting specific therapies in themselves, such as: Colonic irrigators, diathermy, plasmatic, short wave, radionics (various makes or versions), ultrasonic and others, are considered outside the scope of chiropractic practice in Wisconsin. (The foregoing are illustrative only and are not meant to be all-inclusive.)

"(2) Supplementary foods may be supplied for nutritional purposes in the original container, but may not be dispensed nor prescribed for specific conditions."

Chir. 3.02. "X RAY. (1) X ray may be used for diagnostic or analytical purposes only."

If the afore-quoted rules are valid, it readily appears that most of the methods and instrumentalities employed by the defendant, which are described in paragraph 17 of the complaint, are beyond the scope of the defendant's chiropractic license. Furthermore, if the validity of the rules is upheld, none of the attacked paragraphs of defendant's answer would constitute a defense, and the trial court properly sustained the demurrer thereto.

The attorney general's brief quotes definitions of "chiropractic" to be found in various standard dictionaries and encyclopedias, which definitions are of the same restrictive character as that adopted by the licensing board in sec. Chir.

1.14, 1 Wis. Admr. Code. On the other hand, counsel for the defendant have provided the court with more-liberal definitions of "chiropractic" set forth in the statutes of some of the other states. It also appears from the facts stated in the briefs that chiropractic colleges, and the chiropractors themselves, are in disagreement as to whether the practice of chiropractic is restricted to spinal adjustments made by the hands alone, or whether it includes certain adjunctive and complementary procedures, such as those employed by the defendant. It is conceded some of the chiropractic colleges do teach such supplementary methods of treatment.

The learned trial court in its memorandum opinion considered the issue presented by the demurrer as one which required the court to define the term "chiropractic." The trial court gave due consideration to the dictionary and encyclopedia definitions contained in the attorney general's brief, and, based upon such definitions, came to the following conclusion: "From these definitions and others it seems clear that the word ['chiropractic'] is used to describe a system of treating the sick through the manipulation by hand of the spinal column."

The attorney general urges on this appeal that the trial court was correct in holding that it is the function of the courts to define "chiropractic" in the absence of the legislature doing so. On the other hand, counsel for the defendant contend that the courts are without power to define such term, and argue that the legislature intended that whatever practices the chiropractors engage in, and which the chiropractic colleges teach, should govern the scope of a state chiropractic license.

It is our considered judgment that neither position is tenable. This is because the legislature has lodged the function of defining "chiropractic" with a state administrative agency, the chiropractic board of examiners, by sec. 227.014 (2) (a), Stats. It is difficult for us to conceive of any rule

more necessary for such board to adopt, in effectuating the purpose of the chiropractic licensing statute, than one which defines the term "chiropractic." The validity of such definition embodied in the rule, which such board promulgated as sec. Chir. 1.14 of 1 Wis. Admr. Code, is dependent upon whether it "exceeds the bounds of correct interpretation."

In *People v. Fowler* (1938), 32 Cal. App. (2d) 737, 84 Pac. (2d) 326, a California intermediate appellate court was called upon to determine the meaning of the word "chiropractic" in a California statute which did not define the term. It does not appear from the opinion therein that the legislature had delegated such power of definition to a licensing board or other state agency. The court arrived at a definition very similar in scope to that adopted by the Wisconsin chiropractic board of examiners. Such definition was adhered to in the later case of *People v. Mangiagli* (1950), 97 Cal. App. (2d) 935, 218 Pac. (2d) 1025. The definition in sec. Chir. 1.14, 1 Wis. Admr. Code, is also fully consistent with the definitions of "chiropractic" found in Funk & Wagnalls New Standard Dictionary of the English Language (medallion ed. 1941), 469; Webster's New International Dictionary (2d unabridged ed. 1935), 470; and 6 Encyclopedia Americana (1945 ed.), 567–569. Furthermore, it is conceded that a considerable segment of the chiropractic profession and colleges champion this concept of chiropractic practice. We can perceive no clear-cut legislative intent that the licensing board must adopt a definition so broad in scope as to permit every practice or procedure that may be taught in any chiropractic college.

We, therefore, have no difficulty in determining that the definition of "chiropractic" set forth in sec. Chir. 1.14, 1 Wis. Admr. Code, does not exceed the bounds of correct interpretation, and that such section constitutes a valid rule. Likewise, secs. Chir. 3.01 and 3.02 (1), being entirely consistent with the definition set forth in sec. Chir. 1.14, are

also a valid exercise by the licensing board of its rule-making power. These rules render the allegations of the answer, which were demurred to, entirely irrelevant.

One additional argument advanced in behalf of the defendant is deserving of comment. This is a contention that, when the legislature in 1953 enacted the physical-therapy licensing statute (sec. 147.185), it inserted a proviso therein which clearly indicated that chiropractors might practice physical therapy. From this it is further argued that the legislature thus manifested an intention that permissible chiropractic practice in Wisconsin is broader in scope than permitted by the above-considered rules of the licensing board. We cannot agree with either the premise or the conclusion. The proviso thus alluded to constitutes sub. (7) of sec. 147.185, which provides as follows:

"Nothing in this section shall be construed to restrict, inhibit, or limit the practice of chiropractic as now practiced in Wisconsin, and as taught by accredited schools or colleges of chiropractic."

Under sec. Chir. 3.01, 1 Wis. Admr. Code, the use of heat lamps by licensed chiropractors as relaxing adjuncts preparatory to the spinal adjustment is permissible. The definition of "the practice of physical therapy" found in sub. (1) of sec. 147.185, Stats., is broad enough to include such use of heat lamps. The legislature may well have concluded that the proviso contained in sub. (7) of sec. 147.185 was necessary to remove any uncertainty as to the right of chiropractors to employ such heat lamps for the purpose stated in sec. Chir. 3.01. We cannot construe sub. (7) of sec. 147.185 as a grant of power in itself.

*By the Court.*—Order affirmed.

MARTIN, C. J., took no part.