GREEN and others, Respondents, v. ROSENOW and another, Appellants.

*No. 327. Argued April 3, 1974.—Decided May 7, 1974.*
(Also reported in 217 N. W. 2d 388.)

466

For the appellants there was a brief by *Wickhem, Consigny, Sedor, Andrews & Hemming, S. C.,* of Janesville, and oral argument by *John C. Wickhem.*

For the respondents there was a brief and oral argument by *Frank X. Kinast* of Beloit.

ROBERT W. HANSEN, J.   While the challenge is to the licensed chiropractor being permitted to testify in court as to diagnosis and treatment, we begin with the statutorily limited right of chiropractors to treat the sick in this state.

*Treating the sick.*

Sec. 448.02 (1), Stats., prohibits any person from treating the sick who does not hold a license or certificate of registration from the state board of medical examiners "except as otherwise specifically provided by statute." [1] Sec. 446.02 (1) provides for "a license to practice chiropractic from the chiropractic examining board." [2]   This

---

[1] Sec. 448.02 (1), Stats., providing: "No person shall practice or attempt or hold himself out as authorized to practice medicine, surgery, or osteopathy, or any other system of treating the sick as the term 'treat the sick' is defined in s. 445.01 (1) (a), without a license or certificate of registration from the examining board, except as otherwise specifically provided by statute." Reference is to sec. 445.01 (1) (a), providing: "(1) In this chapter:

"(a) 'Treat the sick' means to examine into the fact, condition or cause of human health or disease, or to treat, operate, prescribe or advise for the same, or to undertake, offer, advertise, announce or hold out in any manner to do any of the aforementioned acts, for compensation, direct or indirect, or in the expectation thereof."

[2] Sec. 446.02 (1) and (2), Stats., provide: "(1) No person shall practice chiropractic, or in any manner attempt or hold himself out to do so, unless he has a certificate of registration in the basic sciences and a license to practice chiropractic from the chiropractic examining board . . . ."

court has held that it ". . . necessarily follows that chiropractors so licensed are authorized to treat the sick"[3] but "only to the extent authorized by their chiropractic license."[4] Sec. 446.02, providing for the licensing of chiropractors, does not contain a definition of the word "chiropractic."[5] However, this court has held that the legislature lodged the function of defining "chiropractic" with the chiropractic board of examiners by sec. 227.014 (2) (a).[6] This court held that the rules of the chiropractic examining board defining "chiropractic"[7] and defining supplementary procedures[8] did not exceed the bounds of correct interpretation and constituted a valid and applicable definition of what "chiropractic" means.[9] With one modification,[10] the rules referred to (CHIR

"(2) Application for a license to practice chiropractic shall be made to the examining board, accompanied by sufficient and satisfactory evidence of good moral character, preliminary education consisting of the first 2 years of study in a regularly prescribed course for a bachelor of arts or science degree in a college accredited by the north central association of colleges and secondary schools or in an institution whose credits are accepted by the university of Wisconsin, graduation from a reputable school of chiropractic, approved and recognized by the examining board, having a residence course of not less than 36 months, consisting of not less than 3,600 60-minute class periods, certificate of registration in the basic sciences, and a fee of $25."

[3] State v. Grayson (1958), 5 Wis. 2d 203, 207, 92 N. W. 2d 272.

[4] Id. at page 207.

[5] Id. at page 207.

[6] Id. at page 210.

[7] CHIR 1.14, 1 Wis. Adm. Code.

[8] CHIR 3.01, 1 Wis. Adm. Code.

[9] State v. Grayson, supra, footnote 3, at pages 211, 212, holding: "We, therefore, have no difficulty in determining that the definition of 'chiropractic' set forth in sec. CHIR 1.14, 1 Wis. Adm. Code, does not exceed the bounds of correct interpretation, and that such section constitutes a valid rule. Likewise, secs. CHIR 3.01 and 3.02 (1) being entirely consistent with the definition set forth in sec. CHIR 1.14, are also a valid exercise by the licensing board of its rule-making power. . . ."

[10] CHIR 3.01 (2), 1 Wis. Adm. Code, dealing with dietary advice and supplementary foods.

1.14 and 3.01) are unchanged since 1958, the year of the *Grayson Case,* and such rules, we hold, define the scope of permissible chiropractic practice in Wisconsin in treating the sick.[11]

*Testifying in court.*

Prior to 1953, only persons violating the "treating the sick" statute [12] were barred from testifying in court

[11] CHIR 1.14, 1 Wis. Adm. Code, Chiropractic defined, provides:

"The science of chiropractic is based upon the premise that disease or abnormal function is caused by interference with normal nerve transmission and expression, due primarily to pressure, strain, irritation or tension upon the spinal nerves as they emit from the spinal column, as a result of bony segments, especially of the spine, deviating from the normal juxtaposition. The practice of chiropractic consists of the analysis of any interference with normal nerve transmission and expression and the correction thereof by a specific adjustment with the hands of the abnormal deviations of the bony articulations, especially of the spine, for the removal of the cause of disease, without the use of drugs or surgery. The term, analysis, is construed to include the use of x-ray and other analytical instruments generally used in the practice of chiropractic."

CHIR 3.01, 1 Wis. Adm. Code, Supplementary procedures, provides:

"(1) The use of diagnostic instruments as taught in the chiropractic colleges and generally used in chiropractic practice, as well as purely relaxing adjuncts such as heat lamps or hot towels, used preparatory to the adjustment, are permissible. The use of instruments or machines constituting specific therapies in themselves, such as: Colonic irrigators, diathermy, plasmatic, short wave, radionics (various makes or versions), ultra-sonic and others, are considered outside the scope of chiropractic practice in Wisconsin. (The foregoing are illustrative only and are not meant to be all-inclusive).

"(2) Dietary advice, and supplementary foods in the original container, may be supplied for the purpose of providing special dietary needs and improving nutritional balance, but such foods may not be prescribed as treatment for specific diseases."

[12] Sec. 147.14 (1), Stats. 1951, now renumbered and modified to become sec. 448.02 (1).

". . . in a professional capacity as a medical or osteopathic physician or practitioner of any other form or system of treating the afflicted . . . ." [13] Licensed chiropractors, not being barred from treating the sick in the field of chiropractics, were not barred from testifying in court as to their professional services. In 1953, the situation was legislatively changed by enactment of sec. 147.14 (2) (a), Stats., which provided that "[n]o person without a license or certificate of registration from the state board of medical examiners shall have the right to testify in a professional capacity on a subject relating to medical treatment . . . ." (Now with slight modification, sec. 448.02 (2) (a).) Chiropractors do not hold such license or certificate from such medical examining board and, thus, are not permitted to testify in a professional capacity under sub. (2) (a). However, also in 1953, the legislature enacted sec. 147.14 (2) (b), providing: "A court may permit any person to testify as an expert on a medical subject in any action or judicial proceeding where proof is offered satisfactory to the court that such person is qualified as such expert." (Now sec. 448.02 (2) (b).)

We hold that, under sec. 448.02 (2) (b), Stats., a licensed chiropractor is competent to testify concerning matters within the scope of the practice of chiropractic, where proof is offered, satisfactory to the court, that such chiropractor is qualified as an expert in the field of chiropractic. Citing what was then sec. 147.14 (2) (b), this court upheld the admissibility of testimony by a clinical psychologist, not licensed by the medical examining board, to testify as a medical witness.[14] In that case the court noted that ". . . the law traditionally has permitted limited testimony of a medical nature by one not

---

[13] Sec. 147.14 (2), Stats. 1951, replaced in 1953 by what is now sec. 448.02 (2) (a) and (b).

[14] *Casimere v. Herman* (1965), 28 Wis. 2d 437, 137 N. W. 2d 73.

licensed as a medical doctor, if he is, in fact, qualified as an expert. . . ." [15] In a subsequent case, holding a psychologist's testimony admissible, this court stated: ". . . It is the particular qualifications of the witness in relation to the particular issue which should control rather than the label of a profession or trade. . . ." [16] Such general observations were brought back to and under sec. 448.02 (2) (b) in a more recent case holding the admissibility of testimony by a podiatrist to be ". . . a matter resting in the sound discretion of the trial court, . . ." under sec. 147.14 (2) (b), now sec. 448.02 (2) (b). [17] The standard for determining whether expert testimony should be received was stated in that case as " '. . . requiring that the witness "must have such skill, knowledge or experience in that field . . .".' " [18] Where proof satisfactory to the court is offered that a chiropractor has skill, knowledge or experience in the field of chiropractic, he may be permitted to testify as to matters chiropractic in nature under sec. 448.02 (2) (b).

In the case before us, the trial court permitted the licensed chiropractor who had treated the plaintiffs to testify as to his analysis and treatment, including his analysis of the X rays he had taken, and as to causation

---

[15] *Id.* at page 442, the court also stating at page 444: "The law has long permitted calling as an expert witness any person whose training, experience, and method within his particular discipline is acknowledged to be sound and trustworthy. In many aspects of his work, the psychologist has undoubtedly met this standard."

[16] *Roberts v. State* (1969), 41 Wis. 2d 537, 551, 164 N. W. 2d 525.

[17] *Simpsen v. Madison General Hospital* (1970), 48 Wis. 2d 498, 509, 180 N. W. 2d 586, this court holding: ". . . Sec. 147.14 (2) (b), Stats., [*Note:* Now sec. 448.02 (2) (b)] provides that the court may permit any person to testify on a medical matter where proof 'satisfactory to the court' is presented as to the witness' qualifications."

[18] *Id.* at page 511, quoting *Cramer v. Theda Clark Memorial Hospital* (1969), 45 Wis. 2d 147, 151, 172 N. W. 2d 427.

of the injuries he treated. We affirm the trial court's ruling as to the admissibility of such evidence. While the definitions of chiropractic may vary in some states, we note that other jurisdictions have similarly upheld admissibility of testimony by a chiropractor as to diagnosis, observation and treatment,[19] and causation of injuries treated by the chiropractor.[20]

In the case before us, the trial court did not permit the chiropractor involved to testify as to future pain and suffering or the permanence of the injuries he treated. This court has upheld a trial court's discretion in permitting a podiatrist to testify with respect to his consultations with the person injured, but not to render an opinion in the field of causation of injuries involved in the consultations.[21] There this court said, on the point involved, that: "The question of an expert witness' qualifications is a matter resting in the sound discretion of the trial court, and unless it is shown that the trial court abused its discretion its ruling will stand. . . ."[22] However, in the case before us, the trial court did not make an individuated finding that the chiropractor was not competent or qualified to give an opinion as to prog-

[19] *See: Jones v. National Biscuit Co.* (1968), 29 App. Div. 2d 1033, 289 N. Y. Supp. 2d 588; *Taylor v. Maxwell* (1966), 197 Kan. 509, 419 Pac. 2d 822; *Ward v. North American Rayon Corp.* (1963), 211 Tenn. 535, 366 S. W. 2d 134; *Guiley v. Lowe* (Mo. 1958), 314 S. W. 2d 232; and *Fries v. Goldsby* (1956), 163 Neb. 424, 80 N. W. 2d 171.

[20] *See: Chalupa v. Industrial Comm.* (1973), 109 Ariz. 340, 509 Pac. 2d 610; *Andrade v. Correia* (1971), 358 Mass. 786, 267 N. E. 2d 503; *Badke v. Barnett* (1970), 35 App. Div. 2d 347, 316 N. Y. Supp. 2d 177; *Agler v. Schine Theatrical Co.* (1938), 59 Ohio App. 68, 17 N. E. 2d 118; and *O'Dell v. Barrett* (1932), 163 Md. 342, 163 Atl. 191. *See also:* Annot. (1957), *Expert Witness—Chiropractor,* 52 A. L. R. 2d 1384, 1385.

[21] *Simpsen v. Madison General Hospital, supra,* footnote 17, at pages 509–511.

[22] *Id.* at page 509.

nosis or permanence of injury. Instead, the trial court sustained objection to questions asked as to future pain and suffering and permanence of injury on the broad, generalized ground that a chiropractor, qualified as an expert witness, cannot render an opinion as to future pain or permanency of injury.[23] That goes too far. We do not negate the possibility that, in a particular case, a trial court might find a chiropractor qualified as an expert in the areas of diagnosis, treatment and causation in the field of chiropractic, and not qualified to give an opinion as to future pain or permanency of injury. But the trial court here was permitted to admit testimony by the chiropractor as to future pain and suffering and permanency of injury if the court was satisfied that the chiropractor was qualified to answer such questions as an expert.[24] No claim of error is made by the plaintiffs in this regard, and medical testimony of the orthopedic surgeon who testified as plaintiff's witness adequately supports the jury verdict as to permanency of injuries sustained. But, in the absence of a court ruling that the chiropractor here was not qualified to answer questions as to prognosis and permanency, the opinion of such chiropractor as to future pain and suffering and permanence

---

[23] In excluding chiropractic testimony as to future pain and suffering and permanence of injury, the trial court stated, ". . . the policy of the Legislature . . . has been to (1) allow chiropractors to testify as experts but to be very guarded insofar as how much latitude it allows in the invasion of medical areas, and this is the thing that's causing the Court to rule as it is ruling."

[24] See: (Cases holding admissible testimony by chiropractors as to future pain and suffering or permanence of injury): *Corbin v. Hittle* (1971), 34 Mich. App. 631, 192 N. W. 2d 38; *Watson v. Ward* (Tex. Civ. App. 1967), 423 S. W. 2d 457; *Lowman v. Kuecker* (1955), 246 Iowa 1227, 71 N. W. 2d 586; *Johnston v. Peairs* (1931), 117 Cal. App. 208, 3 Pac. 2d 617; and *Oklahoma Natural Gas Corp. v. Schwartz* (1930), 146 Okla. 250, 293 Pac. 1087. *See also:* Annot. (1957), *Expert Witness—Chiropractor,* 52 A. L. R. 2d 1384, 1390, 1391.

of injury should have been admitted. The barring of such testimony must be individuated to the particular witness and situation, rather than stated as a barrier in all cases.

*Elements of damage.*

Defendants raise three separate contentions as to elements of damage in the jury awards of damages: (1) Defendants contend that there was no proof that the extended series of chiropractic treatments were necessary. The chiropractor testified that the injuries involved were caused by the accident, were the cause of her pain, and that she was treated by chiropractic adjustments "for that condition." Such testimony is a sufficient basis for a jury finding that the chiropractic treatments administered were necessary. (2) Defendants object to damages allowed for drugs prescribed and a mattress purchased by plaintiff at the direction of the orthopedic surgeon. The surgeon did testify to minimal arthritis, as well as vertebral injuries, and did not specify whether the mattress was for the arthritis, the vertebral injury, or both. Where a medical bill may relate to two separate maladies, one having nothing to do with the plaintiff's claim, plaintiff must prove which charges relate to the injury caused by the defendant.[25] With the osteoarthritis found described by the surgeon as minimal, and only Anacin prescribed for such arthritis, we do not upset the jury finding that the mattress, box spring and other drugs— the items totaling $253 of a before-costs verdict of

[25] *Michalski v. Wagner* (1960), 9 Wis. 2d 22, 31, 32, 100 N. W. 2d 354. *See also: Smee v. Checker Cab Co.* (1957), 1 Wis. 2d 202, 205, 206, 83 N. W. 2d 492, finding that ". . . it is quite apparent from the doctor's testimony that his principal concern and effort at the hospital was the diagnosis and treatment of the abdominal condition, . . ." with ". . . the abdominal condition unrelated to the accident. . . ."

$7,968.32—were required by the vertebral injuries sustained in the accident. (3) Defendants contend that the jury award of $800 for loss of consortium to the plaintiff-wife's husband is unsupported by the evidence. The husband testified that his wife, because of the accident, was unable to make beds, vacuum and perform other household tasks, all of which she did before the accident. Finding the injury permanent, the jury had reasonable support in the evidence for the $800 compensation for loss of consortium it fixed. A jury is entitled to compensate damages from loss of consortium ". . . from such amounts that find reasonable support in the evidence and are based upon the jurors' common knowledge and judgment." [26]

*By the Court.*—Judgment affirmed.

[26] *Redepenning v. Dore* (1972), 56 Wis. 2d 129, 135, 136, 201 N. W. 2d 580, upholding jury award of $1,000 for loss of services of plaintiff's daughter, stating: ". . . The evidence indicates that Diane provided many services to her family. She helped with the housework, cooking, baby-sat, made purchases for the family, and did other household and family chores. . . ." *See also: Schwartz v. Milwaukee* (1972), 54 Wis. 2d 286, 292, 195 N. W. 2d 480; *Moran v. Quality Aluminum Casting Co.* (1967), 34 Wis. 2d 542, 557, 150 N. W. 2d 137.