Jerome KERKMAN, Plaintiff-Respondent-Petitioner,

Joyce KERKMAN, Plaintiff-Cross-Appellant-Petitioner,

v.

Max A. HINTZ and National Union Fire Insurance Company of Pittsburgh, Pennsylvania, Defendants-Appellants and Cross-Respondents.

Supreme Court

*No. 86–0215. Argued November 3, 1987.—Decided February 11, 1988.*

(Also reported in 418 N.W.2d 795.)

For the plaintiff-respondent-petitioner and the plaintiff-cross-appellant-petitioner there were briefs by *Robert L. Elliott, Cook & Franke, S.C.,* Milwaukee, and oral argument by *Robert L. Elliott.*

For the defendants-appellants and cross-respondents there was a brief by *Frank R. Terschan, Frisch, Dudek & Slattery, Ltd.,* Milwaukee, and oral argument by *Frank R. Terschan.*

WILLIAM G. CALLOW, J.    This is a review of a published decision of the court of appeals, *Kerkman v. Hintz,* 138 Wis. 2d 131, 406 N.W.2d 156 (Ct. App. 1987), reversing a judgment of the circuit court for Racine county, Judge John C. Ahlgrimm, which found Dr. Max A. Hintz, Chiropractor, liable for malpractice.

There are two issues presented on review. First, did the circuit court instruct the jury correctly on the appropriate standard of care by which to measure a chiropractor's diagnosis, treatment, or referral of a patient? Second, in light of an award of $241,000 in

damages to Mr. Kerkman for past and future pain, suffering and disability, past medical expenses, and loss of earning capacity, should an award of no damages to Mrs. Kerkman for loss of consortium be reversed in the interest of justice? Because we conclude that a chiropractor should be held to a standard of care which requires the chiropractor to exercise the same degree of skill which is usually exercised by a reasonable chiropractor in the same or similar circumstances, we hold that the circuit court's instruction to the jury on the appropriate standard of care was erroneous. Accordingly, we affirm that part of the decision of the court of appeals which remanded the cause for a new trial on negligence. We further conclude that a new trial on the question of Mrs. Kerkman's damages is not required. Accordingly, we reverse that part of the decision of the court of appeals which remanded the question of Mrs. Kerkman's damages to the circuit court for further consideration.

In September, 1982, Jerome Kerkman (Kerkman) consulted Dr. Max A. Hintz, Chiropractor (Hintz), with complaints of soreness in the upper shoulders and neck and numbness in his hands. Kerkman had previously consulted Hintz in 1979 regarding pain in his lower back. In 1979 Hintz had taken an X-ray of Kerkman's spinal column and adjusted Kerkman's back. Hintz is a graduate of the Palmer College of Chiropractic (Palmer College) located in Davenport, Iowa, and his specialty is upper cervical chiropractic. Upper cervical chiropractic concentrates treatment on the top two vertebrae of the spine—the atlas and the axis.

At the initial visit in September, 1982, Hintz took a history from Kerkman, analyzed a subluxation of the C-1 vertebra, and performed an adjustment. In the

two weeks following the initial visit, Hintz saw Kerkman three times and performed two, possibly three, additional adjustments of Kerkman's back. Following these adjustments, Kerkman's condition deteriorated.

In November, 1982, Kerkman went to his family medical physician, Dr. Baker. During the course of Dr. Baker's examination of Kerkman, Dr. Baker called in a neurosurgeon, Dr. Harry H. Lippman (Lippman). Lippman diagnosed a compressed spinal column and thereafter performed an operation to relieve the compression. Following the surgery, Kerkman felt better temporarily. However, Kerkman's condition began to deteriorate, and a second operation was performed to remove a herniated disc at the C-5/C-6 level of the cervical spine. Following the second operation, Kerkman still had problems with numbness in his hands, walking, and bladder control.

In May of 1984, Kerkman commenced this action against Hintz, alleging negligent treatment. In addition, Mrs. Kerkman joined the action with a claim for loss of consortium. At trial, the evidence presented by Kerkman, concerning whether Hintz had met the required standard of care, focused on whether Hintz had exercised the care and skill exercised by a recognized school of the medical profession. Specifically, Kerkman introduced the testimony of two neurosurgeons, Dr. Lavern Herman and Dr. Harry Lippman, both of whom testified that from a medical standpoint Hintz had not conducted a proper diagnosis of Kerkman. In opposition to the evidence presented by Kerkman, the evidence introduced by Hintz focused on Hintz's assertion that he had exercised the same degree of care which is usually exercised by a reasonable chiropractor.

At the close of evidence, Hintz requested Wisconsin Civil Jury Instruction 1023, modified to reflect the fact that the claim was for chiropractic malpractice.[1] In essence, Hintz requested an instruction that, as a chiropractor, he was required to exercise the same degree of care which is usually exercised by a reasonable chiropractor. The trial court declined to give the proposed instruction and, instead, instructed the jury that a chiropractor must exercise the same degree of care and skill which is usually exercised by a recognized school of the medical profession.[2] On August 16, 1985, the jury returned a verdict awarding Kerkman $241,000 in damages. The jury verdict further provided that nothing be awarded to Mrs. Kerkman for loss of consortium.

---

[1] Dr. Hintz's requested instruction stated in pertinent part: "It was the duty of the defendant chiropractor, in rendering chiropractor services to the plaintiff in treatment of his complaints, to exercise that degree of care, skill, and judgment which is usually exercised, under like or similar circumstances, by the average chiropractor, who practices the specialty which the defendant practices, having due regard for the advanced state of chiropractic at the time in question."

[2] The trial court's instruction to the jury provided in pertinent part: "You are instructed that in the State of Wisconsin, a licensed Chiropractor is obligated to conduct a competent assessment and evaluation of a patient's condition before chiropractic treatment or consultation. In performing this duty, a chiropractor must exercise the same degree of care and skill that is usually exercised by a recognized school of the medical profession. In this regard, you are instructed that ignorance in the practice of medicine does not lessen a chiropractor's liability for failure to perform this duty. If you determine that the defendant, Max A. Hintz, failed to perform this duty by exercising the same degree of care and skill that is usually exercised by a recognized school of the medical profession, you will find Max A. Hintz to be negligent."

409

Following trial, Hintz filed several motions after verdict, alleging primarily that the circuit court had erred when it instructed the jury that Hintz was to be held to the same degree of care and skill which is usually exercised by a recognized school of medicine. Hintz further alleged that the circuit court erred in permitting medical doctors to testify that the medical standard of care was breached by Hintz. Kerkman also filed motions after verdict requesting: (1) judgment on the verdict and (2) that the circuit court change the award of no damages for loss of consortium to an award of $15,000.

In denying Hintz's motions, the circuit court noted that its instruction to the jury was based on *Kuechler v. Volgmann*, 180 Wis. 238, 192 N.W. 1015 (1923), in which it was held that, in evaluating a patient's condition prior to treatment, a chiropractor must exercise the same degree of care and skill which is usually exercised by a recognized school of the medical profession.[3] The circuit court further ruled that, because the chiropractor's treatment had invaded the field of medicine, it was appropriate to permit medical doctors to testify that the medical standard of care was breached. After denying Kerkman's request to change the loss of consortium jury determination, the circuit court granted Kerkman's motion for judgment on the verdict.

Both Kerkman and Hintz appealed from the order and judgment of the circuit court, each raising sub-

---

[3]Hintz's other motions, alleging that Kerkman failed to prove a causal connection between the care and the injury, that the award was excessive and contrary to public policy, that the verdict unconstitutionally deprived Hintz of his rights, and that the verdict was against the great weight of the evidence, were also denied by the circuit court.

stantially the same issues which were before the circuit court. The court of appeals reversed the judgment of the circuit court. According to the court of appeals, the standard of care articulated in *Kuechler* had been abrogated through subsequent legislative action which recognized chiropractic care and provided for the licensing of chiropractors. *Kerkman,* 138 Wis. 2d at 139, 142. The court of appeals then established a new standard of care which required chiropractors "to (1) recognize a medical problem as contrasted with a chiropractic problem; (2) refrain from further chiropractic treatment when a reasonable chiropractor should be aware that the patient's condition is not amenable to chiropractic treatment and the continuation of the treatment may aggravate the condition; and (3) refer the patient to a medical doctor when a medical mode of treatment is indicated." *Id.* at 144. The court of appeals further held that, in determining whether a chiropractor has breached his or her duty, that the chiropractor "is held to the same standard of care as the reasonable chiropractor in the same or similar circumstances." *Id.* Because the jury was improperly instructed, the court of appeals reversed the judgment of the circuit court and remanded for a new trial on the issue of negligence, with instructions for the circuit court to determine whether the erroneous instruction affected the determination of damages as to both Mr. and Mrs. Kerkman, and whether a new trial on the issue of damages was required.

The court of appeals also addressed the question of whether nonchiropractic experts could be used to establish a breach of the chiropractor's standard of care. In this regard, the court of appeals held that, because of the overlap between the chiropractic and

medical professions, a medical doctor's testimony is admissible if there is a sufficient factual showing that the medical witness is qualified by knowledge, skill, experience, training, or education to give the requested opinion. *Id.* at 149 (citing sec. 907.02, Stats.). On May 7, 1987, this court granted Kerkman's petition for review.

Kerkman, in asserting that it was error for the court of appeals to conclude that the *Kuechler* holding had been abrogated, contends that the legislative enactment of separate licensure for chiropractors emphasizes the legislature's recognition of the need for a chiropractor to be held to a medical standard of care when diagnosing a patient's condition before rendering chiropractic treatment. According to Kerkman, instead of liberating chiropractors from being held to a standard for diagnosing a patient's condition consistent with medical knowledge, the codification and recodification of the administrative regulation of the Chiropractic Examining Board has served to underscore the recognition that the safety of the patient is paramount and that the chiropractor must know when the patient's problem is beyond the bounds of the chiropractor's training and education. It is Kerkman's position that the circuit court properly relied upon *Kuechler* and properly instructed the jury to assess Hintz's conduct in light of the degree of care usually exercised by a recognized school of the medical profession. Although the codification of the administrative regulation of the Chiropractic Examining Board may have served to underscore the recognition that the safety of the patient is paramount, we disagree that this compels the conclusion that a chiropractor must be held to a medical standard of care.

██

For the reasons listed below, we conclude that the holding in *Kuechler*—that a chiropractor must be held to a medical standard when diagnosing or analyzing a patient's ailment—has been abrogated. In *Kuechler,* this court addressed the question of the appropriate standard of care to apply to a chiropractor's analysis and diagnosis of a patient's ailment. According to the court, when a chiropractor undertakes to analyze or diagnose a patient's ailment, the chiropractor "must exercise the care and skill ... usually exercised by a recognized school of the medical profession." *Kuechler,* 180 Wis. at 244. Underlying this holding was the court's conclusion that "the practice of chiropractic is the practice of medicine." *Id.*

However, at the time *Kuechler* was decided, chiropractors were not licensed professionals. Since that time, the legislature has enacted numerous provisions for the licensure and regulation of chiropractors. Specifically, in 1925 the legislature for the first time provided that a person must be licensed before practicing chiropractic. Sec. 147.23, Stats. (1925).[4] By 1956, administrative regulations had been adopted which included a definition of chiropractic.[5]

---

[4]Section 147.23(1), Stats. (1925), provides in pertinent part:

"No person shall practice chiropractic ... unless he [has] a certificate of registration in the basic sciences and a license to practice chiropractic from the state board of examiners in chiropractic."

[5]Prior to the adoption of the 1956 Administrative Code, the Attorney General, in 1932, opined that "chiropractic is the adjustment of, ordinarily, the spinal column, and ordinarily only by manipulation by the hand; also, that chiropractic does not include the use of any medicines or drugs, nor surgery, nor the use

Wis. Admin. Code, Chapter CHIR 1 (1956). The validity of these administrative regulations were subsequently affirmed by this court. *State v. Grayson,* 5 Wis. 2d 203, 211, 92 N.W.2d 272 (1958).

In 1982, at the time Kerkman sought chiropractic care from Hintz, the Wisconsin statutes provided that no person may engage in the practice of chiropractic unless licensed by the Chiropractic Examining Board. In addition, all applicants for a license to practice chiropractic must have completed two years of study towards a bachelor of arts or science degree and must have graduated from a reputable school of chiropractic. Sec. 446.02, Stats. (1981–82). Applicants must also have passed both a written examination on subjects taught in approved chiropractic schools and a clinical examination. Wis. Admin. Code, sec. Chir 1.03 (1982). (All references in this opinion are to the Wisconsin Administrative Code in effect in 1982 unless otherwise noted.)

The statutes further provided that the practice of chiropractic means:

> "(a) To examine into the fact, condition, or cause of departure from complete health and proper condition of the human; to treat without the use of drugs ... or surgery; to counsel; to advise for the same for the restoration and preservation of health or to undertake ... to do any of the aforementioned acts, for compensation ...; and
>
> "(b) To employ or apply chiropractic adjustments and the principles or techniques of chiropractic science in the diagnosis, treatment or prevention of any of the conditions described in s. 448.01(10)." Sec. 446.01(2), Stats. (1981–82).

---

of any devices which do other than adjust." 21 Op. Att'y Gen. 646, 651 (1932).

Section 448.01(10), Stats. (1981–82), pertaining to medical practices, provided that to "[t]reat the sick" meant "to examine into the fact, condition or cause of human health or disease, or to treat, operate, prescribe or advise for the same."

According to the Administrative Code, the practice of chiropractic included "examination, counsel and advice with respect to the diagnosis and/or analysis of any interference with normal nerve transmission, expression and the correction thereof by a chiropractic adjustment to remove the interference as a cause of disease, without the use of drugs or surgery." Wis. Admin. Code, sec. Chir 3.02(1). Diagnosis and/or analysis included "the use of diagnostic and analytical instruments and procedures approved by the [chiropractic examining] board and within the scope of the practice of chiropractic in which the licensee can show proof of proficiency to the board." *Id.* at 3.02(2). The use of "instruments or machines such as colonic irrigators, diathermy, plasmatic, short wave, radionics ..., and ultra-sonic" was specifically prohibited. *Id.* at 3.02(3).

The Administrative Code further provided that: "The science of chiropractic is based on the premise that disease or abnormal function can be caused by abnormal nerve impulse transmission ..., due to compression, traction, pressure or irritation upon nerves, as the result of bony segments, especially of the spine or contiguous structures, either deviating from juxtaposition and/or functioning in an abnormal manner so as to irritate nerves or their receptors." *Id.* at 3.01.

Through the enactment of this legislation, the legislature has recognized the practice of chiropractic as a separate and distinct health care discipline. In

licensing chiropractors to examine into the cause of departure from complete health and by authorizing chiropractors to diagnose, treat or prevent disease,[6] the legislature has recognized chiropractors as providers of health care. However, by limiting chiropractors to the use of chiropractic adjustments and the principles or techniques of chiropractic science in the diagnosis, treatment or prevention of disease while prohibiting the use of traditional medical tools, e.g., drugs or surgery,[7] the legislature has recognized that the practice of chiropractic is distinct from the practice of medicine.

The testimony of Dr. John V. Whaley (Whaley), a chiropractor licensed to practice in Wisconsin, supports the distinct nature of chiropractic care. According to Whaley, a chiropractor does not treat or diagnose disease. Instead, a chiropractor's practice is limited to the analysis and correction of subluxation. The chiropractor's function is to locate the subluxation, if it exists, adjust it back to the correct position, and then allow the body to restore itself to normalcy. A medical doctor's practice, on the other hand, is completely opposite. The medical doctor is concerned with the diagnosis and treatment of the diseased area through the use of drugs and surgery or other techniques.

Although chiropractors are permitted to use some medical tools when analyzing and treating a patient, this overlap does not transform the practice of chiropractic into the practice of medicine. Because of this legislative recognition of chiropractors as a separate health care discipline, the underlying premise of

[6]*See* sec. 446.01, Stats. (1981–82).
[7]*Id.*

416

*Kuechler* and its conclusion, that chiropractors are to be held to a medical standard, can no longer be followed.

Our conclusion that chiropractors should not be held to a medical standard is supported by an examination of the limited legislative authorization of chiropractors to diagnose and/or analyze and treat by chiropractic means. This authorization extends to individuals whose knowledge is limited to that provided by chiropractic training. Sec. 446.01(2), Stats. (1981–82); Wis. Admin. Code, sec. Chir 3.02(1). In light of the fact that chiropractic training is limited primarily to analysis and adjustments of the spine, the legislature, in granting chiropractors the authorization to analyze a patient's ailment, must be held to have determined that the judgment of whether to treat a patient would be made based upon chiropractic knowledge, not medical knowledge. In fact, because a chiropractor is prohibited from using certain medical diagnostic tools, a chiropractor could not analyze a patient's ailment based upon medical knowledge. Consistent with this, a chiropractor's decision to treat cannot be tested in accordance with medical knowledge; it must be tested in accordance with chiropractic knowledge.

We note that Kerkman's reference to *Treptau v. Behrens Spa, Inc.,* 247 Wis. 438, 449–50, 20 N.W.2d 108 (1945), in support of the argument that *Kuechler* has not been abrogated, is erroneous. According to Kerkman, *Treptau* in 1945 cited *Kuechler* for the proposition that a chiropractor is to be held to that degree of care which is usually exercised by a recognized school of medicine. Although this case does cite *Kuechler* for this proposition, *Treptau* involved a chiropractor who had gone outside the practice authorized by his license

and had, therefore, engaged in the practice of medicine. Because we are concerned in this case with conduct which is within the scope of a chiropractor's license (diagnosis and analysis of a patient), *Treptau* is inapplicable.

Having concluded that the chiropractic standard of care set out in *Kuechler* is no longer valid, we must establish a new standard of care for Wisconsin chiropractors. In determining this standard of care, the standards to which we have held other professions are instructive. In analyzing the quality of care required of physicians, we have held that a physician must "'exercise that degree of care and skill which is exercised by the average practitioner in the class to which he belongs, acting in the same or similar circumstances.'" *Francois v. Mokrohisky,* 67 Wis. 2d 196, 200, 226 N.W.2d 470 (1975). A dentist is required to "exercise that degree of care, diligence, judgment, or skill which dentists in good standing usually exercise ... under like or similar circumstances, having regard to the advanced state of dental science at the time of discharging his legal duty to his patient." *Lindloff v. Ross,* 208 Wis. 482, 487, 243 N.W. 403 (1932). An attorney must exercise "'a reasonable degree of care and skill, and ... possess to a reasonable extent the knowledge requisite to a proper performance of the duties of his profession, and, if injury results to the client as a proximate consequence of the lack of such knowledge or skill, or from the failure to exercise it, the client may recover damages to the extent of the injury sustained.'" *Malone v. Gerth,* 100 Wis. 166, 173, 75 N.W. 972 (1898); *Helmbrecht v. St. Paul Insurance Co.,* 122 Wis. 2d 94, 111, 362 N.W.2d 118 (1985). In *Helmbrecht* the court noted that the trier of fact must determine what the alleged negli-

gent attorney did and what a reasonable or prudent attorney would have done in the same circumstance. *Id.* at 112.

In each of these cases, the focus of the inquiry has been on whether the allegedly negligent professional failed to exercise that degree of care, diligence, judgment, or skill which is usually exercised by someone of the same school, under like or similar circumstances. *See also Gordon v. Milwaukee County,* 125 Wis. 2d 62, 69, 370 N.W.2d 803 (Ct. App. 1985) (county liable for failure to predict course of a mental patient's disease only if "county-employed psychiatrists who examine and diagnose persons alleged to be ill and dangerous fail to exercise that degree of care and skill which would be exercised by the average psychiatrist acting in the same or similar circumstances"). Other courts, in articulating a standard of care, have held that a chiropractor must "exercise the degree of care and skill ordinarily exercised by other chiropractors in a similar community." *Boudreaux v. Panger,* 490 So. 2d 1083, 1085 (La. 1986); *Maxwell v. McCaffrey,* 219 Va. 909, 913, 252 S.E.2d 342 (1979); *See also Janssen v. Mulder,* 232 Mich. 183, 190, 205 N.W. 159 (1925) (plaintiff must prove that chiropractor was negligent through the testimony of one engaged in treatment by similar methods to those employed by defendant).

We have previously recognized that a chiropractor is "authorized to treat the sick only to the extent authorized by their chiropractic license." *Grayson,* 5 Wis. 2d at 207. Consistent with this limitation and the standards which have been imposed on other professionals, we conclude that a chiropractor must exercise that degree of care, diligence, judgment, and skill

which is exercised by a reasonable chiropractor under like or similar circumstances.

We further note that the standard of care adopted by the court of appeals in this case fails to recognize limitations imposed by the legislature upon chiropractors. In delineating the standard of care applicable to a chiropractor, the court of appeals held that a chiropractor is required to "(1) recognize a medical problem as contrasted with a chiropractic problem; (2) refrain from further chiropractic treatment when a reasonable chiropractor should be aware that the patient's condition is not amenable to chiropractic treatment and the continuation of the treatment may aggravate the condition; and (3) refer the patient to a medical doctor when a medical mode of treatment is indicated." *Kerkman,* 138 Wis. 2d at 144.

As previously noted, a chiropractor is limited by his or her license to practice within the scope of chiropractic knowledge and training. Consistent with this limitation, we hold that a chiropractor is required first to determine whether the patient presents a problem which is treatable through chiropractic means. If the patient has a problem which is treatable through chiropractic means, the chiropractor may provide chiropractic treatment to the patient. However, the chiropractic must refrain from further chiropractic treatment when a reasonable chiropractor should be aware that the patient's condition will not be responsive to further treatment. If the patient presents a problem which is outside the scope of chiropractic treatment, then the chiropractor must inform the patient that the problem presented is not within the chiropractor's license to treat. Having

explained to the patient that the problem is not within the chiropractor's license to treat, the chiropractor does not have a duty to refer the patient to a medical doctor. *Cf. Howe v. Smith,* 203 Pa. Super. 212, 218, 199 A.2d 521 (1964) (although chiropractor has authority to diagnose, that authority is for the limited purpose of determining whether the particular treatment which may be legally rendered to a patient is proper treatment for the disease from which the patient is suffering; a chiropractor, therefore, does not have the authority to diagnose generally).

In holding that a chiropractor does not have a duty to refer, we recognize that a number of states have imposed such a requirement. *See, e.g., Rosenberg by Rosenberg v. Cahill,* 99 N.J. 318, 333, 492 A.2d 371 (1985); *Mostrom v. Pettibon,* 25 Wash. App. 158, 163, 607 P.2d 864 (1980). However, because implicit in a requirement that a chiropractor refer a patient to a medical doctor is the imposition on the chiropractor to make a medical determination that the patient needs medical care, such a determination could not be made without employing medical knowledge. Because a chiropractor is not licensed to make such a determination, we hold that a chiropractor does not have a duty to refer a patient who is not treatable through chiropractic means to a medical doctor.

In summary, we hold that a chiropractor has a duty to (1) determine whether the patient presents a problem which is treatable through chiropractic means; (2) refrain from further chiropractic treatment when a reasonable chiropractor should be aware that the patient's condition will not be responsive to further treatment; and (3) if the ailment presented is outside the scope of chiropractic care, inform the patient that the ailment is not treatable through

chiropractic means. In determining whether a chiropractor breaches these duties, the chiropractor is held to that degree of care, diligence, judgment, and skill which is exercised by a reasonable chiropractor under like or similar circumstances.

In the present case, the jury was instructed that Hintz was required to exercise the same degree of care and skill which is usually exercised by a recognized school of the medical profession. Under the rule announced today, that instruction is erroneous. We therefore remand the question of negligence to the circuit court for a new trial consistent with the standard of care articulated in this opinion.

Hintz has asked that this case be dismissed because the only competent evidence indicated that his actions were consistent with the care usually exercised by a chiropractor. Regardless of the accuracy of this assertion, we conclude that the proper remedy is a remand for a new trial. The Kerkmans initiated and pursued their claim in accordance with *Kuechler v. Volgmann, supra.* Having determined for the first time that the standard of care enunciated in *Kuechler* is no longer applicable, the parties are entitled to a new trial consistent with this opinion.

The court of appeals also addressed the question of the competency of nonchiropractic experts to testify regarding a breach of the chiropractic standard of care. The admission of expert testimony is largely a matter within the discretion of the circuit court. *State v. Friedrich,* 135 Wis. 2d 1, 15, 398 N.W.2d 763 (1987). In Wisconsin, the general rule is that expert testimony is admissible if it will assist the trier of fact to understand the evidence or to determine a fact in issue and if the person testifying is qualified in the

field in which the testimony is being elicited. Sec. 907.02, Stats.; *see Herman v. Milwaukee Children's Hospital,* 121 Wis. 2d 531, 551, 361 N.W.2d 297 (Ct. App. 1984).

Thus, a chiropractor is qualified to testify regarding the practice of chiropractic and the corresponding standard of care. *Green v. Rosenow,* 63 Wis. 2d 463, 470, 217 N.W.2d 388 (1974). Moreover, one who is not licensed to practice chiropractic may testify regarding the standard of care for a chiropractor if qualified as an expert in the area in which testimony will be given.

We next address Hintz's argument that the jury's award of $241,000 for damages to Kerkman is excessive. The question on review is whether there exists any credible evidence which supports the jury's award. *Coryell v. Conn,* 88 Wis. 2d 310, 315, 276 N.W.2d 723 (1979). In determining whether any credible evidence exists to support the award, we must view the evidence in the light most favorable to the plaintiff. *Id.* at 317. There was testimony in this case which indicated that Kerkman had suffered a series of damages, including, but not limited to, considerable pain and suffering and permanent partial disability. Based upon the testimony in the record, we are satisfied that there is credible evidence to support the jury's award of $241,000 to Mr. Kerkman. Accordingly, we reverse that part of the decision of the court of appeals which remanded, with instructions, the question of Mr. Kerkman's damages.

In conclusion, we address Mrs. Kerkman's argument that the jury's award of no damages for loss of consortium should be reversed in the interest of

justice. This court may reverse a judgment or order appealed from when it is necessary to accomplish the ends of justice. Sec. 751.06, Stats. Under sec. 751.06 and our prior cases, discretionary reversal is appropriate (1) whenever the real controversy has not been fully tried or (2) whenever it is probable that justice has for any reason miscarried. *See, e.g., State v. Wyss,* 124 Wis. 2d 681, 735, 370 N.W.2d 745 (1985); *State v. Cuyler,* 110 Wis. 2d 133, 142, 327 N.W.2d 662 (1983); *Jones (George Michael) v. State,* 70 Wis. 2d 41, 56, 233 N.W.2d 430 (1975). Our review of the record indicates that only a modest amount of evidence was presented regarding damages to Mrs. Kerkman. The jury evaluated this evidence and determined that no damages should be awarded. We are not convinced that the controversy has not been fully tried or that justice has miscarried. Accordingly, we reverse that part of the decision of the court of appeals which remanded, with instructions, the question of Mrs. Kerkman's damages.

*By the Court.*—The decision of the court of appeals is affirmed in part, reversed in part, and the cause is remanded for a new trial on the question of negligence only.