Jerome KERKMAN, Plaintiff-Respondent,†

Joyce KERKMAN, Plaintiff-Cross-Appellant,†

v.

Max A. HINTZ and National Union Fire
Insurance Company of Pittsburgh,
Pennsylvania, Defendants-Appellants and
Cross-Respondents.

Court of Appeals

*No. 86–0215. Argued October 9, 1986.—Decided March 11,
1987.*

(Also reported in 406 N.W.2d 156.)

† Petition to review granted.

131

For the plaintiff-respondent and plaintiff-cross-appellant their were briefs by *Robert L. Elliott* and *Kathy L. Nusslock* of *Cook & Franke, S.C.* of Milwaukee. There was oral argument by *Mr. Elliott.*

For the defendants-appellants and cross-respondents there were briefs and oral argument by *Frank R. Terschan* of *Frisch, Dudek and Slattery, Ltd.* of Milwaukee.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

NETTESHEIM, J.    Dr. Max Hintz, D.C. appeals a judgment based on a jury verdict finding him liable for chiropractic malpractice. The principal issue on appeal concerns the appropriate standard of care by which to measure a chiropractor's diagnosis, treatment or referral of a patient. Because we conclude that the trial court erroneously instructed the jury on a chiropractor's standard of care, we reverse and remand for a new trial.

Dr. Hintz is a graduate of the Palmer College of Chiropractic in Davenport, Iowa.[1] On September 13, 1982, Jerome Kerkman consulted Hintz with complaints of soreness in the upper shoulders and neck and numbness in his hands. Kerkman had previously consulted Hintz in 1979 regarding pain in his lower back. In 1979, Hintz took an X-ray of Kerkman's spinal column, analyzed a subluxated C-1 vertebra and adjusted Kerkman's back.[2] At the initial 1982 visit, Hintz also analyzed a subluxation of the C-1 vertebra and performed an adjustment. It is undisputed that in the two weeks following Kerman's initial visit, Hintz performed between three and four additional adjustments of Kerkman's back.

---

[1]The Palmer College of Chiropractic teaches upper cervical chiropractic which concentrates treatment on the top two vertebrae of the spine called the atlas and axis.

[2]A chiropractic "adjustment" consists of a manual manipulation of a patient's spine for the purpose of replacing subluxated vertebra.

Following these consultations, Kerkman's condition deteriorated and in November 1982, a neurosurgeon diagnosed Kerkman's back problems as resulting from a decompressed spinal column. Consequently, Kerkman underwent surgery. This resulted in temporary relief for Kerkman, but in June 1983, his condition again deteriorated. Further surgery revealed a herniated disc at the C-5/C-6 level of the cervical spine.

In May 1984, Kerkman commenced this malpractice action against Hintz alleging negligent treatment. At trial, however, the issue narrowed to one of alleged improper diagnosis, although evidence of the treatment was also received.

At the close of the evidence, Hintz proposed standard instruction Wis J I—Civil 1023 adapted to reflect the claim of chiropractic malpractice.[3] The

[3]Dr. Hintz's requested instruction stated in relevant part:

It was the duty of the defendant chiropractor, in rendering chiropractor services to the plaintiff in treatment of his complaints, to exercise that degree of care, skill, and judgment which is usually exercised, under like or similar circumstances, by the average chiropractor, who practices the specialty which the defendant practices, having due regard for the advance state of chiropractic at the time in question.

The mere fact that a bad result may have followed the treatment administered by the defendant chiropractor, does not, in itself, require you to find that he was negligent in treating the plaintiff. If the defendant chiropractor exercised the degree of care, skill, and judgment required of him as heretofore stated, he cannot be found negligent simply on the basis of the results obtained.

The defendant chiropractor was not required to exercise the utmost or highest degree of care, skill, or judgment known to the chiropractic profession in his treatment of plaintiff's complaints. He was neither a guarantor nor an insurer of plaintiff's cure. He is not accountable for a mistake in judgment if his judgment was

trial court declined the proposed instruction and, instead, instructed that a chiropractor must exercise the same degree of care and skill that is usually exercised by a recognized school of the medical profession.[4] This instruction forms the initial basis for this appeal. Hintz also appeals the evidentiary ruling which permitted medical doctors to testify that the medical standard of care was breached by Hintz.

■ A trial court has broad discretion when instructing a jury. *State v. Higginbotham,* 110 Wis. 2d 393, 403, 329 N.W.2d 250, 255 (Ct. App. 1982). We will not reverse if the instruction, as a whole, communicates a correct statement of the law. *Leahy v. Kenosha Memorial Hosp.,* 118 Wis. 2d 441, 451, 348 N.W.2d 607, 613 (Ct. App. 1984). However, where the instruction is erroneous and probably misleads the jury, we will reverse because the misstatement constitutes prejudicial error. *Id.* at 452, 348 N.W.2d at 613.

made with the care and skill required of him as a chiropractor in his area of specialization.

[4]The trial court's instruction to the jury stated in relevant part:

> You are instructed that in the State of Wisconsin a licensed chiropractor is obligated to conduct a competent assessment and evaluation of a patient's condition before chiropractic treatment or consultation. In performing this duty, a chiropractor must exercise the same degree of care and skill that is usually exercised by a recognized school of the medical profession. In this regard, you are instructed that ignorance in the practice of medicine does not lessen a chiropractor's liability for failure to perform this duty. If you determine that the defendant, Max A. Hintz failed to perform this duty by exercising the same degree of care and skill that is usually exercised by a recognized school of the medical profession, you will find Max A. Hintz to be negligent and you will answer Question No. 1 "yes."

Hintz argues that the trial court's instruction erroneously held him to the same degree of skill as the medical profession when instead the trial court should have instructed on the degree of skill and care required from a reasonable and ordinary chiropractor of the same school as Hintz. Hintz points out that all of the chiropractors testifying at trial indicated that he had fulfilled the "reasonable chiropractor" standard.

The Kerkmans strongly argue that the trial court correctly instructed the jury based on *Kuechler v. Volgmann,* 180 Wis. 238, 192 N.W. 1015 (1923).[5] In *Kuechler,* the trial court held that when a chiropractor undertakes to analyze or diagnose a patient's ailment, the chiropractor "must exercise the care and skill in so doing that is usually exercised by a recognized school of the medical profession." *Id.* at 244, 192 N.W. at 1017–18. There, a chiropractor concluded that a patient was suffering from "some derangement of the stomach with resulting nervousness and headache" when, in fact, the patient was afflicted with a brain tumor. *Id.* at 240, 192 N.W. at 1016. The court reasoned:

> It is clear from the allegations of the complaint that defendant undertook to diagnose as well as to treat the disease. Diagnosis is ordinarily assumed and performed by licensed medical or osteopathic physicians. But it may be assumed by others, and it is held that the practice of chiropractic is the

[5]In *Kuechler v. Volgmann,* 180 Wis. 238, 192 N.W. 1015 (1923), the supreme court also made a distinction between the standard of care required for chiropractic diagnosis as opposed to that required for chiropractic treatment. *See Id.* at 242, 192 N.W. at 1017; *see also* Annotation, *Liability of Drugless Practitioner or Healer for Malpractice,* 19 A.L.R.2d 1188, 1199 n. 17 (1951).

practice of medicine. And the fact that chiropractors abstain from the use of words like *diagnosis, treatment,* or *disease* is immaterial. What they hold themsélves out to do and what they do is to treat disease, and the substitution of words like *analysis, palpatation,* and *adjustment* does not change the nature of their act. [Citations omitted.]

*Id.* at 244, 192 N.W. at 1017. (Emphasis in original.)[6]

In order to resolve the issue raised, we are required to review the continued validity of the supreme court's holding in *Kuechler.* We view the question of a chiropractor's standard of care as one with widespread implications for the afflicted and for the chiropractic profession in Wisconsin. Consequently, we would ordinarily consider this review as beyond this court's error correcting or limited law declaring functions, *see State v. Grawien,* 123 Wis. 2d 428, 432, 367 N.W.2d 816, 818 (Ct. App. 1985); *State ex rel. Swan v. Elections Bd.,* 133 Wis. 2d 87, 108, 394 N.W.2d 732, 741 (1986) (Abrahamson, J., dissenting), and more properly within the institutional function of our supreme court. *See State ex rel. Swan,* 133 Wis. 2d at 93–94, 394 N.W.2d at 735. Intermediate appellate

---

[6]The Kerkmans also cite to *Treptau v. Behrens Spa, Inc.,* 247 Wis. 438, 20 N.W.2d 108 (1945), in support of their argument that chiropractors must establish the skill and care set out in *Kuechler.* Although this case does cite to *Kuechler* with approval, *Treptau* involved a chiropractor who diagnosed a patient's swollen foot as being caused by arthritis and a bone infection and treated the foot with a tight bandage and head treatments. Consequently, *Treptau* involved a case where the chiropractor had gone outside the practice authorized by his license and engaged in the practice of medicine. *Id.* at 448, 20 N.W.2d at 113. Thus, the chiropractor was properly subjected to the standard of skill and care of an ordinary medical doctor. *See* sec. 448.12, Stats.

courts in other jurisdictions have also recognized this limitation, *see Ferguson v. Gonyaw,* 236 N.W.2d 543, 548–49 (Mich. Ct. App. 1975), and supreme courts in other jurisdictions have resolved the question of a chiropractor's standard of care, *see Rosenberg v. Cahill,* 492 A.2d 371 (N.J. 1985). For purposes of having the supreme court make this important statement, we certified this case to that body. Our certification, however, was rejected.

This court may examine legislation subsequent to a judicial pronouncement of ʲa common law rule to determine whether the common law rule has been abrogated. *American Family Mut. Ins. Co. v. Reciprocal Ins. Serv. Exch. Management Co.,* 111 Wis. 2d 308, 310, 330 N.W.2d 223, 224 (Ct. App. 1983). The basis for the court's holding in *Kuechler* was its conclusion that "the practice of chiropractic is the practice of medicine." *Kuechler,* 180 Wis. at 244, 192 N.W. at 1017. Because of subsequent legislative action, however, we conclude that the basis for the *Kuechler* holding has been abrogated and the standard of care laid down in *Kuechler* is no longer viable.

In 1923, at the time of *Kuechler,* chiropractors were unregulated practitioners. However, in 1925, the legislature laid down the regulatory framework for the licensing of chiropractors. *See* sec. 147.23, Stats. (1925). By 1956, the regulations spread to the administrative code which included a definition of chiropractic science. *See* 1956 Wis. Adm. Code, sec. Chir 1.01 *et seq.; see also State v. Grayson,* 5 Wis. 2d 203, 92 N.W.2d 272 (1958) (holding the administrative rules and definitions to be valid).

139

Today, ch. 446, Stats., and the administrative code regulate the practice of chiropractic in Wisconsin. Chiropractic science is:

> that body of systematic and organized knowledge relating primarily to the identification, location, removal or reduction of any interference to nervous system integrity or nerve energy expression and the resulting change in biomechanical or physiological homeostasis. It is based on the major premise that disease or abnormal function may be caused by abnormal nerve impulse transmission or expression due to biochemical factors, compression, traction, pressure or irritation upon nerves as a result of bony segments, especially of the spine or contiguous structures, either deviating from normal juxtaposition or function which irritates nerves, their receptors or effectors.

Wis. Adm. Code, sec. Chir 4.02. Section 446.01(2), Stats., defines the practice of chiropractic to mean:

> (a) To examine into the fact, condition, or cause of departure from complete health and proper condition of the human; to treat without the use of drugs ... or surgery; to counsel; to advise for the same for the restoration and preservation of health or to undertake, offer, advertise, announce or hold out in any manner to do any of the aforementioned acts, for compensation, direct or indirect or in expectation thereof; and
>
> (b) To employ or apply chiropractic adjustments and the principles or techniques of chiropractic science in diagnosis, treatment or prevention of any of the conditions described in s. 448.01(10).

The administrative code further elaborates that:

> The practice of chiropractic is the application of chiropractic science in the adjustment of the

spinal column, skeletal articulations and adjacent tissue which includes diagnosis and analysis to determine the existence of spinal subluxations and associated nerve energy expression and the use of procedures and instruments preparatory and complementary to treatment of the complementary to treatment of the spinal column, skeletal articulations and adjacent tissue. Diagnosis and analysis may include physical examination, specimen analysis, drawing of blood, blood-analysis and the use of x-ray and other instruments.

Wis. Adm. Code, sec. Chir 4.03. The administrative code also details a list of prohibited chiropractic practices. *See* Wis. Adm. Code, sec. Chir 4.05.[7]

[7]Wisconsin Adm. Code, sec. Chir 4.05 provides:

The use of the following practices, procedures and instruments or their substantially similar counterparts, regardless of name, is prohibited in the practice of chiropractic:

(1) A chiropractor may not practice obstetrics, except nothing in this section may be construed to prevent the practice of chiropractic as described in s. Chir 4.03 during a patient's pregnancy.

(2) A chiropractor may not perform:

(a) Abortions;

(b) Surgery;

(c) Hair analysis, if it is used as the only determinant for recommending chiropractic treatment or nutritional supplementation;

(d) Acupuncture, by needle insertion or laser application; or,

(e) Colonic irrigation.

(3) A chiropractor may not use:

(a) X-ray procedures that require introduction of drugs, clinical dyes or radioactive substances;

(b) Therapeutic x-ray;

(c) Therapeutic ultrasound;

(d) Galvanic therapy;

(e) Acuclips; or,

(f) Pfeiffer technique.

In light of these legislative pronouncements, we conclude that the *Kuechler* reasoning that "the practice of chiropractic is the practice of medicine" can no longer be viewed as an absolute statement of law in this state. The legislature has recognized that chiropractors and medical doctors are both members of the healing arts in that they are both ultimately concerned with the healing of the ills of their patients. Moreover, under the regulatory framework for chiropractors, chiropractic is at times a small subset of medicine, with the chiropractor able to use some, but not all, of the medical tools when analyzing and treating a patient. *See, e.g.,* Wis. Adm. Code, sec. Chir. 4.04 (chiropractor able to use X-rays to analyze patient's maladies). However, chiropractic only minimally intrudes into the medical field because chiropractors "are authorized to treat the sick only to the extent authorized by their chiropractic license." *Grayson,* 5 Wis. 2d at 207, 92 N.W.2d at 274–75.

At most other times, the practice of chiropractic does not overlap into and is separate from the practice of medicine. Dr. John V. Whaley, D.C., a chiropractor licensed to practice in Wisconsin and a graduate of the Palmer School, testified that a chiropractor does not treat or diagnose disease. Rather, a chiropractor analyzes a patient's spine and treats "subluxated" vertebra which may cause nerve interference. Dr. Whaley explained that "the chiropractic objective is to

---

(4) A chiropractor may not administer substances subcutaneously.

(5) A chiropractor may not prescribe, dispense, deliver or administer drugs, as defined in s. 450.06, Stats., except nothing in this subsection may be construed to prevent the sale of vitamins, herbs or nutritional supplements.

locate the subluxation if it exists and then to adjust it back to its correct position with the objective of allowing the body better opportunity to restore itself." Dr. Whaley also noted that "the practice of medicine is ... the opposite [of the practice of chiropractic] because the medical doctor through the use of drugs and surgery and other [medical] techniques is concerned with ... diagnosis and treating the diseased area." Dr. Whaley's testimony is consistent with the legislative definitions of chiropractic.

■

Because we have concluded that the chiropractic standard of care set out in *Kuechler* is no longer valid, we are required to establish a new standard of care for Wisconsin chiropractors. In the medical area, we have held that the legal duty of a physician or a hospital is the reasonable exercise of that standard of skill and care which is maintained by the average practitioner or institution in the same class or professional calling, acting under the same or similar circumstances. *Johnson v. Misericordia Community Hosp.*, 97 Wis. 2d 521, 543–44, 294 N.W.2d 501, 513 (Ct. App. 1980), *aff'd,* 99 Wis. 2d 708, 301 N.W.2d 156 (1981). In addition, commentators have opined that the three main areas of chiropractic liability fall within the diagnosis, treatment and referral of patients. *See* Stutt, *Negligence of Drugless Healers Chiropractors,* Vol. 58, No. 7, Wis. Bar. Bull., 22 (July, 1985).

■

Based on these authorities, we conclude that chiropractors owe a duty to exercise reasonable care in the analysis and treatment of their patients which includes the duty to inform them when nonmedical treatment has become useless or harmful and medical treatment should be sought. *See Mostrom v. Pettibon,*

607 P.2d 864, 867 (Wash. Ct. App. 1980). This standard of care requires a chiropractor to (1) recognize a medical problem as contrasted with a chiropractic problem; (2) refrain from further chiropractic treatment when a reasonable chiropractor should be aware that the patient's condition is not amenable to chiropractic treatment and the continuation of the treatment may aggravate the condition; and (3) refer the patient to a medical doctor when a medical mode of treatment is indicated. *See id.; Rosenberg,* 492 A.2d at 378. In determining whether a chiropractor breaches these duties, he is held to the same standard of care as the reasonable chiropractor in the same or similar circumstances.[8] *See Mostrom,* 607 P.2d at 867.

This standard of care is attractive because it measures a chiropractor's actions against other reasonable and ordinary chiropractors who are also restricted in their treatment by the four corners of the chiropractic license. *See Grayson,* 5 Wis. 2d at 207, 92 N.W.2d at 274–75. This standard of care also provides sufficient protection for the patient public because it ensures that a chiropractor will perform reasonably

[8]In fixing this standard of care, we have considered whether the school of chiropractic which the chiropractor espouses should also be included as a legal component of the standard. We make this observation because the record here briefly alludes to the particular school of chiropractic which Dr. Hintz practices as compared to another school which employs a different philosophy as to the reasons for ailments and a different method as to treatment. We decline to include this factor in the standard of care. The record here contains only meager information on this question. Moreover, the allegations of negligence in this case rest not upon the particular school of chiropractic practiced, but rather upon the alleged failure of Dr. Hintz to recognize Kerkman's medical problem. Whether further refinement of this standard will be required to allow for this factor must await future cases.

within the chiropractic field or face malpractice liability. Moreover, if a chiropractor performs outside the practice authorized by the chiropractic license into other areas of the healing arts, the chiropractor assumes the same standard of care mandated for practitioners in those areas and the corresponding potential for liability. *See* sec. 448.12, Stats.[9]

█

Because the jury was improperly instructed on a crucial matter which probably misled the jury, *see Leahy,* 118 Wis. 2d at 452, 348 N.W.2d at 613, we reverse the judgment.[10]

---

[9]Section 448.12, Stats., provides:

Anyone practicing medicine, surgery, osteopathy, or any other form or system of treating the sick without having a license or a certificate of registration shall be liable to the penalties and liabilities for malpractice; and ignorance shall not lessen such liability for failing to perform or for negligently or unskillfully performing or attempting to perform any duty assumed, and which is ordinarily performed by authorized practitioners.

[10]We note that the trial court, in a post-judgment decision, justified its jury instruction on a chiropractor's standard of care on the grounds that this case involved a chiropractor who "should have recognized that the [patient's] ailment was medical and not treatable with chiropractic treatment." Consequently, the court reasoned that this case was consistent with *Treptau,* where the chiropractor "invaded the field of medicine."

While some of the evidence may have supported the court's conclusion, other evidence indicated that Dr. Hintz was properly operating within the chiropractic field when diagnosing and treating Kerkman. Consequently, we view that question as one for the trier of fact and although a portion of the trial court's instruction may not have been improper, the instruction did not give the jury a complete statement of the law, thus denying it the opportunity to fully perform its function.

The next question is whether a new trial is necessary. Hintz argues that a new trial is not warranted because the only competent evidence assessing his conduct demonstrated that his actions were in accord with reasonable chiropractic standards. While this is true, we note that this case was apparently tried by the Kerkmans in the belief that the *Kuechler* standard was the law of Wisconsin. In a case where a plaintiff relies upon an incorrect theory of law and where the trial court submits the case upon such theory, an appellate court may, in its discretion, order a new trial in the interest of justice if it appears the real controversy has not been tried. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Boeck,* 127 Wis. 2d 127, 141, 377 N.W.2d 605, 611 (1985); sec. 752.35, Stats. We so conclude under the facts of this case and the apparent belief by the Kerkmans that the *Kuechler* standard applied. Moreover, we note that the instruction proposed by Hintz does not completely comport with the standard of care adopted in this case. Thus, it remains to be determined whether the competent testimony supporting Hintz's actions is in keeping with the new standard announced herein. Therefore, we additionally remand for a new trial.

In light of this remand for a new trial, we go on to address the use of nonchiropractic experts to establish a breach of the chiropractor's standard of care. Cases involving areas of the healing arts require expert testimony to establish the degree of care and skill required of the treating person or entity unless the situation is one where the common knowledge of laymen affords a basis for finding negligence. *See Christianson v. Downs,* 90 Wis. 2d 332, 338, 279

N.W.2d 918, 921 (1979) (expert testimony needed to establish the standard of care of a medical doctor); *see also Froh v. Milwaukee Medical Clinic,* 85 Wis. 2d 308, 318, 270 N.W.2d 83, 87 (Ct. App. 1978) (expert testimony is required to establish the standard of care for a hospital). A chiropractor is qualified to testify regarding the practice of chiropractic and the corresponding standard of care. *See Green v. Rosenow,* 63 Wis. 2d 463, 470, 217 N.W.2d 388, 391–92 (1974). Without expert testimony, the jury has no standard for determining whether there has been a breach of the requisite duty of care. *See Froh,* 85 Wis. 2d at 317, 270 N.W.2d at 87.

Here, the trial court admitted the testimony of medical doctors indicating that Dr. Hintz failed to fulfill the medical standard of skill and care when analyzing and treating Kerkman's complaints. As it is already apparent from the holding of this case, this testimony is not relevant to the issue of Dr. Hintz's malpractice unless additional evidence indicates that Dr. Hintz had stepped outside the restrictions of his license and was practicing in other areas of the healing arts.

However, a medical doctor's testimony may, in an appropriate case, be relevant to whether a chiropractic standard of care is breached. We find *Rosenberg,* 492 A.2d at 375–79, somewhat instructive on this issue.

In *Rosenberg,* the court held that a medical doctor was competent to express an opinion concerning the standard of care applicable to a chiropractor and the chiropractic use of X-rays and the diagnosis of physical conditions. *Id.* at 379. There, the chiropractor used X-rays to diagnose a child's subluxated vertebra. The chiropractor, however, failed to notice that the X-ray had soft tissue "tumors" which are a symptom of

Hodgkin's disease and treated the child with an adjustment of the subluxated vertebra. *Id.* at 373–74. At trial, the plaintiff introduced the testimony of a medical doctor which indicated that the chiropractor failed to exercise reasonable care in reading the X-rays. *Id.* at 373.

The *Rosenberg* court recognized its prior reasoning that when a member of one profession is "familiar with the situation in issue," such a person is competent to testify as to the "accepted practice" applicable to a member of the other profession." *Id.* at 376 (quoting *Sanzari v. Rosenfeld,* 167 A.2d 625, 629 (N.J. 1961)). The court concluded that in New Jersey "there is a commonality of education, training and licensure between the chiropractic and medical professions" concerning the actions at issue in that case (use of X-rays and the diagnosis of conditions that may require medical attention). *Id.* at 377. While this "overlap" might be sufficient to render a medical doctor qualified to state an opinion concerning a chiropractor's actions, the true test as to whether such qualifications exist must, of necessity, be made on a case-by-case basis. *See* sec. 907.02, Stats.

Unlike *Rosenberg,* we are not prepared to state here to what extent the practices of medicine and chiropractic "overlap." This was not the issue below and, even if we were inclined to make such a statement, an insufficient evidentiary record on this question is presented. In a given case, such "overlap" may or may not be sufficient to render a medical witness competent to testify as to a chiropractic standard of care. There also may be other grounds for rendering a medical witness competent to testify as to a chiropractic standard of care.

Therefore, a medical doctor's testimony as to a chiropractor's performance under the chiropractic standard of care may be relevant, and therefore admissible, if there is a sufficient factual showing that the medical witness is qualified by "knowledge, skill, experience, training, or education," *see* sec. 907.02, Stats., to give the required opinion. In fashioning this evidentiary rule, we also echo the *Rosenberg* court's words of caution:

> [L]icensed medical doctors are not always qualified to testify in cases involving the asserted malpractice of a chiropractor. The act of negligence must involve the breach of a duty that the medical doctor can evaluate.

*Rosenberg,* 492 A.2d at 378.

Our holding requires a new trial on the issue of Dr. Hintz's liability. However, we defer to the discretion of the trial court as to whether the erroneous instruction affected the determination of damages as to both Mr. and Mrs. Kerkman[11] and whether a new trial on the issues of damages is also required. *See Leahy,* 118 Wis. 2d at 453, 348 N.W.2d at 614.[12]

*By the Court.*—Judgment reversed and cause remanded.

---

[11]Mrs. Kerkman has cross-appealed the jury's refusal to award damages for her loss of consortium claim.

[12]Because of our conclusions in this case, we are not required to address the other issues raised on appeal and cross-appeal.