Robert P. GOLDSTEIN, Special Administrator and Personal Representative of the Estate of Gerald A. Pilak, Deceased, and Joan P. Pilak, surviving spouse of Gerald A. Pilak, Deceased, Plaintiffs-Appellants,†

v.

JANUSZ CHIROPRACTIC CLINICS, S.C., Mark A. Murray, D.C. and National Chiropractic Mutual Insurance Company, Defendants-Respondents.

Court of Appeals

*No. 97–0326. Oral argument March 23, 1998.—Decided April 21, 1998.*

(Also reported in 582 N.W.2d 78.)

†Petition to review denied.

684

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Frank T. Crivello, II*, of *Warshafsky, Rotter, Tarnoff, Reinhardt & Bloch, S.C.*, of Milwaukee, with oral argument by *Frank T. Crivello II*.

On behalf of the defendants-respondents Mark A. Murray, D.C. and National Chiropractic Mutual Insurance Company, the cause was submitted on the brief of *Mark J. Steichen* of *Boardman, Suhr, Curry & Field* of Madison, with oral argument by *Mark J. Steichen*.

On behalf of the defendants-respondents Janusz Chiropractic Clinics, S.C. and National Chiropractic Mutual Insurance Company, the cause was submitted on the brief of *Michael J. Pfau* and *Lance S. Grady* of *Hinshaw & Culbertson*, of Milwaukee, with oral argument by *Lance S. Grady*.

Before Wedemeyer, P.J., Schudson and Curley, JJ.

CURLEY, J. Robert P. Goldstein, the special administrator and personal representative of the estate of Gerald A. Pilak, deceased, and Joan P. Pilak, Gerald Pilak's surviving spouse, appeal from the trial court's order granting summary judgment in favor of Janusz Chiropractic Clinics, S.C., Mark A. Murray, D.C., and National Chiropractic Mutual Insurance Company. This suit follows Gerald Pilak's death from lung cancer on October 15, 1994. The appellants filed a

wrongful death action against the respondents on the basis of Dr. Murray's treatment of Mr. Pilak between October 24 and November 7, 1992. The appellants alleged that Dr. Murray was negligent for failing to detect and inform Mr. Pilak of an abnormal mass near Mr. Pilak's right lung, which was revealed by an x-ray that Dr. Murray ordered and examined during his chiropractic treatment of Mr. Pilak. The trial court granted summary judgment to the respondents, citing *Kerkman v. Hintz*, 142 Wis. 2d 404, 418 N.W.2d 795 (1988), for its conclusion that Dr. Murray had no legal duty to detect or inform Mr. Pilak of the abnormality. The appellants argue that the trial court erred because, under *Kerkman*, although Dr. Murray may not have had a duty to diagnose Mr. Pilak's abnormal lung cancer, Dr. Murray did have a duty to recognize the mass as an abnormality, and to inform Mr. Pilak that the abnormal mass was not treatable through chiropractic means. Additionally, they claim that this case was not ripe for summary judgment disposition because expert testimony was required.

We conclude that the trial court correctly granted summary judgment to the respondents for the following reasons. First, the supreme court in *Kerkman* implicitly determined that chiropractors do not have a duty to "recognize medical problems" because to do so would require chiropractors to make medical determinations which, under Wisconsin law, they are not licensed to make. Second, as a matter of law, recognition of an abnormal mass in the lung area which was revealed by an x-ray is not within the practice of chiropractic because it concerns a body organ which is not a part of the "spinal column, skeletal articulation or adjacent tissue." *See* WIS. ADM. CODE § CHIR 4.03. Thus, detection or recognition of the mass as an "abnormal-

ity" would have amounted to a "recognition of a medical problem." Finally, we conclude that this case was capable of resolution without the assistance of expert witnesses. Accordingly, we hold that Dr. Murray had no duty to recognize or inform Mr. Pilak that the mass of tissue revealed by his x-ray was an "abnormality," and consequently, the trial court correctly granted summary judgment to the respondents.

## I. BACKGROUND.

In April 1992, Mr. Pilak visited his family physician, complaining of fatigue. His doctor ordered a chest x-ray. The x-ray report from the radiologist, which was sent to the family physician, stated that "even masses not entirely excluded." Notwithstanding this language, the doctor failed to follow up on the report.[1] Several months later, Mr. Pilak, complaining primarily of neck, shoulder and back pain, sought chiropractic treatment at the Janusz Chiropractic Clinic. Dr. Murray ordered chest and neck x-rays of Mr. Pilak's cervical and thoracic spine and he sent only the neck x-ray to Dr. Edward Aprahamian, an osteopathic radiologist. Both Dr. Aprahamian and Dr. Murray examined the x-rays and found only multiple subluxation complexes in the cervical and thoracic spine.[2] The x-ray results were explained to Mr. Pilak and he accepted a recommended schedule of care, returning to the clinic five times for chiropractic adjustment to his spine. The x-rays, however, also revealed a mass in the area of Mr. Pilak's

---

[1] The suit commenced against the treating physician and his insurance company was resolved by the payment of $1,000,000 to the appellants.

[2] A "subluxation," according to WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, 2276 (1976), is a "partial dislocation (as of one of the bones in a joint)."

right lung which both Dr. Murray and Dr. Aprahamian failed to detect or recognize as an abnormality.[3] Consequently, Dr. Murray never informed Mr. Pilak of the existence of the abnormal mass. Mr. Pilak subsequently died of lung cancer on October 18, 1994.

Following Mr. Pilak's death, the appellants filed a wrongful death action against the respondents, alleging that the x-rays "revealed early stages of cancer" which Dr. Murray negligently failed to detect; thus, the appellants contend he "misread" them, resulting in Mr. Pilak's developing the incurable cancer which caused his death. The respondents moved for summary judgment, and the trial court granted the motion on the basis that, under *Kerkman*, Dr. Murray had no legal duty to detect or report the abnormality to Mr. Pilak. The appellants made a motion for reconsideration which was denied; judgment was entered, and the appellants now appeal.

## II. ANALYSIS.

Our review of a trial court's grant of summary judgment is *de novo*. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315–16, 401 N.W.2d 816, 820 (1987). We use the same summary judgment methodology as the trial court. *Id.* That methodology has been described in many cases, *see e.g., Grams v. Boss*, 97 Wis. 2d 332, 338, 294 N.W.2d 473, 476–77 (1980), and need not be repeated here. Summary judgment must be granted if the evidentiary material demonstrates "that there is no genuine issue as to any material fact and

---

[3] Dr. Aprahamian was not given the chest x-ray, but instead was given only the neck films, which did not reveal the mass in the lung area.

that the moving party is entitled to a judgment as a matter of law." RULE 802.08(2), STATS.

This appeal raises the issue of whether Dr. Murray, a chiropractor, had a duty to recognize an abnormal mass located in the lung area revealed by an x-ray and to inform Mr. Pilak of that "abnormality." We conclude that treatment of the lungs falls outside the practice of chiropractic; hence, recognizing a mass in the lung area as an "abnormality," as a matter of law, falls outside the scope of a chiropractor's license. Therefore, under *Kerkman*, Dr. Murray had no duty to recognize or to inform Mr. Pilak of the "abnormality," and the trial court properly granted summary judgment.

In order to prove their claim against Dr. Murray, the appellants needed to show the four elements of any negligence claim: (1) a duty of care on the part of the defendant; (2) a breach of that duty; (3) a causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of the injury. *See Coffey v. Milwaukee*, 74 Wis. 2d 526, 531, 247 N.W.2d 132, 135 (1976). Whether Dr. Murray had a duty to recognize that the mass in the lung area shown on Mr. Pilak's x-ray was an "abnormality" is a question of law which this court reviews *de novo. See id.*

In *Kerkman*, the Wisconsin Supreme Court determined a chiropractor's general duties with respect to the care and treatment of his or her patients. In that case, the plaintiff's spinal condition worsened following a series of chiropractic adjustments, and the plaintiff sued the chiropractor alleging negligent treatment. *Kerkman*, 142 Wis. 2d at 407–08, 418 N.W.2d at 797. The case went to trial, and at the close of evidence, the trial court declined the defendant's request for an

instruction that, as a chiropractor, he was required to exercise the same degree of care usually exercised by a reasonable chiropractor. *Id.* at 409, 418 N.W.2d at 797–98. Instead, the court, based on the holding of *Kuechler v. Volgmann*, 180 Wis. 238, 192 N.W. 1015 (1923), instructed the jury that "a chiropractor must exercise the same degree of care and skill which is usually exercised by a recognized school of the medical profession." *Id.* at 409–10, 418 N.W.2d at 797–798. The jury returned a verdict awarding the plaintiff damages, and the defendant and the plaintiff appealed. *Id.* at 409–11, 418 N.W.2d at 798.

The court of appeals reversed and held that the standard of care articulated in *Kuechler* had been abrogated through subsequent legislative action providing for the licensing of chiropractors. *Id.* at 411, 418 N.W.2d at 798. The court of appeals then established a new standard of care which required chiropractors:

> to (1) recognize a medical problem as contrasted with a chiropractic problem; (2) refrain from further chiropractic treatment when a reasonable chiropractor should be aware that the patient's condition is not amenable to chiropractic treatment and the continuation of the treatment may aggravate the condition; and (3) refer the patient to a medical doctor when a medical mode of treatment is indicated.

*Id.* (quoting *Kerkman v. Hintz*, 138 Wis. 2d 131, 144, 406 N.W.2d 156, 161 (Ct. App. 1987)). The plaintiff then appealed the court of appeals' decision, and the supreme court granted the petition for review. *Id.* at 412, 418 N.W.2d at 799.

The supreme court affirmed in part and reversed in part. *Id.* at 407, 418 N.W.2d at 797. First, the supreme court agreed with the court of appeals that

*Kuechler*'s holding had been abrogated by subsequent legislative enactments. *Id.* at 413, 418 N.W.2d at 799. The court noted that *Kuechler*'s holding that chiropractors "must exercise the care and skill . . . usually exercised by a recognized school of the medical profession" was grounded in its conclusion that "the practice of chiropractic is the practice of medicine." *Id.* (internal quotation marks and quoted source omitted). The court observed, however, that subsequent to the decision in *Kuechler*, the legislature had enacted numerous provisions for the licensure and regulation of chiropractors, and that administrative regulations had been adopted specifically defining the practice of chiropractic. *Id.* at 413–14, 418 N.W.2d at 799. The court held that by enacting this legislation, "the legislature has recognized that the practice of chiropractic is distinct from the practice of medicine." *Id.* at 416, 418 N.W.2d at 800. Therefore, the court concluded that "[b]ecause of this legislative recognition of chiropractors as a separate health care discipline [sic], the underlying premise of *Kuechler* and its conclusion, that chiropractors are to be held to a medical standard, can no longer be followed." *Id.* at 416–17, 418 N.W.2d at 801.

Having determined that the chiropractic standard of care set out in *Kuechler* was no longer valid, the supreme court then established a new standard of care for Wisconsin chiropractors. *Id.* at 418, 418 N.W.2d at 801. In doing so, the supreme court concluded that "a chiropractor must exercise that degree of care, diligence, judgment, and skill which is exercised by a reasonable chiropractor under like or similar circumstances." *Id.* at 419–20, 418 N.W.2d at 802. The supreme court, however, explicitly declined to accept the court of appeals' three-part delineation of a chiro-

practor's specific duties, noting that "the standard of care adopted by the court of appeals in this case fails to recognize limitations imposed by the legislature upon chiropractors." *Id.* at 420, 418 N.W.2d at 802. Contrary to the court of appeals formulated tripartite standard, the supreme court adopted a markedly different three-part standard, holding:

> [A] chiropractor has a duty to (1) determine whether a patient presents a problem which is treatable through chiropractic means; (2) refrain from further chiropractic treatment when a reasonable chiropractor should be aware that the patient's condition will not be responsive to further treatment; and (3) if the ailment presented is outside the scope of chiropractic care, inform the patient that the ailment is not treatable through chiropractic means.

*Id.* at 421–22, 418 N.W.2d at 803.

The supreme court's formulation differs from that of the court of appeals in two important ways relevant to this appeal. First, the court of appeals' standard required chiropractors to "recognize a medical problem as contrasted with a chiropractic problem," *Kerkman*, 138 Wis. 2d at 144, 406 N.W.2d at 161; by contrast, the supreme court's standard states that chiropractors only have a duty to "determine whether the patient presents a problem which is treatable through chiropractic means." *Kerkman*, 142 Wis. 2d at 421, 418 N.W.2d at 803. Second, the court of appeals' standard required chiropractors to "refer the patient to a medical doctor when a medical mode of treatment is indicated," *Kerkman* 138 Wis. 2d at 144, 406 N.W.2d at 161; in contrast, the supreme court's standard states that chiropractors only have a duty "if the ailment presented is

outside the scope of chiropractic care, [to] inform the patient that the ailment is not treatable through chiropractic means." *Kerkman*, 142 Wis. 2d at 421–22, 418 N.W.2d at 803.

These two important distinctions were deliberate and reflect the limitations placed on chiropractors in Wisconsin by their licenses. With respect to the second difference, the supreme court explicitly declined to require chiropractors to refer their patients to medical doctors, even though it recognized that other states imposed such a requirement, because "implicit in a requirement that a chiropractor refer a patient to a medical doctor is the imposition on the chiropractor to make a medical determination that the patient needs medical care." *Id.* at 421, 418 N.W.2d at 802. The court concluded that "chiropractor[s are] not licensed to make such a determination" because "such a determination could not be made without employing medical knowledge." *Id.* at 421, 418 N.W.2d at 802–03.

The court declined, however, to explicitly explain the first difference between the standards, namely, that while the court of appeals required chiropractors to "recognize a medical problem as contrasted with a chiropractic problem" the supreme court only placed a duty on a chiropractor to "determine whether the patient presents a problem which is treatable through chiropractic means . . . ." *See id.* at 420–21, 418 N.W.2d at 802–03. The implication, however, is that the same rationale applies. The supreme court presumably decided not to require chiropractors to "recognize a medical problem" because doing so would require a chiropractor to make a medical determination, in violation of a chiropractor's license. Instead, the court only

693

required chiropractors to determine whether a patient "presents a problem which is treatable through chiropractic means." Therefore, by replacing the court of appeals' standard requiring chiropractors to "recognize a medical problem" with a duty on the part of chiropractors to merely determine whether a patient "presents a problem which is treatable through chiropractic means," the supreme court implicitly concluded that chiropractors do not have a duty to "recognize medical problems."

In this case, the appellants claim that Dr. Murray should have "recognized" that a mass in the lung area shown on an x-ray of Mr. Pilak's spine was an "abnormality." We conclude, however, that doing so, as a matter of law, would amount to "recognizing a medical problem" and that, therefore, Dr. Murray had no duty to recognize the mass in the lung area as an "abnormality."

At oral argument, the appellants argued that, irrespective of the standard of care/duty analysis, the facts of this case indicate that the mass was on "adjacent tissue," and therefore, that Dr. Murray should have recognized it as an abnormality. If, as the appellants contend, the lung constitutes adjacent tissue under the definition of the practice of chiropractic found in WIS. ADM. CODE § CHIR 4.03, then recognition of a mass in the lung area as an "abnormality" could be within the scope of Dr. Murray's chiropractic practice, and might not amount to a "recognition of a medical problem." To resolve this issue, the appellants contend that expert testimony is required, making this case inappropriate for summary judgment. We conclude, however, as a matter of law, that in this case the parameters of the practice of chiropractic are understandable without the assistance of expert testimony.

The appellants seek to establish a duty on Dr. Murray's part to recognize the mass as an abnormality by claiming that the definition of chiropractic practice includes the lungs as "adjacent tissue." We disagree. The statutory definitions of the science of chiropractic and of chiropractic practice lead to the conclusion that, in Wisconsin, chiropractors' responsibility to recognize conditions is limited to certain human body parts that they can treat and that the scope of their practice does not encompass treatment of the lungs. The practice of chiropractic has been defined by the Chiropractic Examining Board as:

> the application of chiropractic science in the adjustment of the spinal column, skeletal articulations and adjacent tissue which includes diagnosis and analysis to determine the existence of spinal subluxations and associated nerve energy expression and the use of procedures and instruments preparatory and complementary to treatment of the spinal column, skeletal articulations and adjacent tissue. Diagnosis and analysis may include physical examination, specimen analysis, drawing of blood, blood-analysis and the use of x-ray and other instruments.

WIS. ADM. CODE § CHIR 4.03. "Chiropractic science" is further defined as:

> that body of systematic and organized knowledge relating primarily to the identification, location, removal or reduction of any interference to nervous system integrity or nerve energy expression and the resulting change in biomechanical or physiological homeostasis. It is based on the major premise that disease or abnormal function may be caused by

695

abnormal nerve impulse transmission or expression due to biochemical factors, compression, traction, pressure or irritation upon nerves as a result of bony segments, especially of the spine or contiguous structures, either deviating from normal juxtaposition or function which irritates nerves, their receptors or effectors.

Accordingly, the practice of chiropractic, as the supreme court stated in *Kerkman*, is "limited to the analysis and correction of subluxation" and chiropractic training is "limited primarily to analysis and adjustments of the spine . . . ." *Kerkman*, 142 Wis. 2d at 417, 418 N.W.2d at 800–01. Therefore, we determine that the lungs are not to be considered as "adjacent tissue" to the "spinal column" and "spinal articulations" for the purposes of the definition of chiropractic practice found in WIS. ADM. CODE § CHIR 4.03. As a result, in Wisconsin, it is beyond the scope of chiropractic practice to treat lung conditions, and chiropractors are certainly not licensed to diagnose or treat lung cancer.

The appellants next claim that even if the lung is not an "adjacent tissue" to the spine, Dr. Murray should have recognized that a mass in the lung area shown on Mr. Pilak's x-ray was an abnormality. We are not persuaded. The plaintiffs have attempted in their briefs to distinguish between "recognizing" and "diagnosing" medical problems. According to the plaintiffs, even if Dr. Murray had no duty to "diagnose" the mass in the lung area shown on the x-ray as "being a malignant tumor," they posit that nevertheless he did have a duty to "recognize" that the mass was an "abnormality." Nowhere in their briefs or oral argument, however, do the plaintiffs explain how a chiropractor, who is not licensed to make medical determinations,

could conclude that a mass in the lung area pictured on an x-ray was "abnormal" without employing medical knowledge.

Although chiropractors may take and analyze x-rays, they may only do so for diagnostic or analytical purposes in the *practice of chiropractic*. WIS. ADM. CODE § CHIR 4.03. Recognizing "abnormalities" related to a patient's lungs has nothing to do with "the adjustment of the spinal column, skeletal articulations and adjacent tissue" or the "determin[ation of] the existence of spinal subluxations. . . ." *See* WIS. ADM. CODE § CHIR 4.03. Therefore, we do not see how a chiropractor could conclude that a mass in the lung area shown on an x-ray was "abnormal" without making a medical determination beyond the scope of his or her license.

The plaintiffs again contend that summary judgment was inappropriate because whether Dr. Murray had a duty to recognize the mass in the lung area on the x-ray as an "abnormality" could only be determined through expert testimony. As noted earlier, the scope of practice for chiropractors is set forth in the administrative code and, under these facts, requires no expert testimony to understand. However, the plaintiffs point to the expert testimony of Ronnie Firth, D.C., a professor at the Palmer College of Chiropractic Medicine in Iowa, and of Dr. Murray's employer, Raymond Janusz, D.C. Dr. Firth, in an affidavit, stated that "[p]art of the training of American students of chiropractic, before and after 1980 and up until the present, is to be skilled in the ability to read and interpret x-rays so as to be able to discover any masses and lesions," and that "[a]lthough the chiropractor may not be the one to diagnose the exact nature and prescribe treatment for masses and lesions that are diagnosed upon x-ray, it is a necessary element of chiropractic care to be able to

697

determine the existence of the same. . . ." Similarly, Dr. Janusz testified in his deposition that if he had taken the x-rays of Mr. Pilak, in the normal average exercise of his professional duties, he would have "looked them over" carefully, and that, had he done so, his "interpretation [that the lung mass was abnormal] would be . . . similar [to his interpretation given during the deposition]."

Neither Dr. Firth's nor Dr. Janusz's testimony, however, establishes that recognition of a mass in the lung area shown on an x-ray as being "abnormal" is within the scope of a chiropractor's license in Wisconsin. Although other states may have broader definitions of the scope of chiropractic practice which would allow a chiropractor to make a medical determination that a mass of lung tissue was "abnormal," the scope of chiropractic practice is more limited in Wisconsin. As a matter of law, pursuant to *Kerkman* and the definition of chiropractic practice found in WIS. ADM. CODE § CHIR 4.03, chiropractors are not licensed to make medical determinations which require medical, as opposed to chiropractic knowledge, and consequently, have no duty to recognize medical problems. Despite Dr. Firth's and Dr. Janusz's testimony to the contrary, we see no way in which the recognition that a mass in the lung area as being "abnormal" could fail to be a medical determination and the "recognition of a medical problem." Even if a chiropractor was not able to determine that a mass in the lung area shown on an x-ray was cancerous, the mere recognition of the mass as "abnormal" implies knowledge of what makes the lung area shown on an x-ray "normal." Such knowledge, at least given the restricted scope of chiropractic practice in this state, must necessarily be "medical" as opposed to "chiropractic" knowledge.

In conclusion, because lungs are not adjacent tissue, the discovery of a mass in the lung area does not fall within the chiropractic expertise and is a medical problem. Chiropractors have no duty to recognize medical problems, and because recognition of a mass in the lung area as being abnormal is necessarily the recognition of a medical problem, we conclude that Dr. Murray did not have a duty to recognize or inform Mr. Pilak that the mass in the lung area shown on his x-ray was "abnormal." Further, these conclusions can be reached without the assistance of expert testimony. Thus, we conclude that the trial court properly granted summary judgment to the respondents.

*By the Court.*—Order affirmed.